[No. A038967. First Dist., Div. Two. June 20, 1989.]

In re NATHANIEL P. et al., Minors.
DEPARTMENT OF SOCIAL SERVICES, Petitioner and
Respondent, v.
DAVID P., Objector and Appellant.

**COUNSEL**

Leo Paoli for Objector and Appellant.

Louise H. Renne, City Attorney, Kimberly A. Reiley and Julia Ten Eyck, Deputy City Attorneys, for Petitioner and Respondent.

**OPINION**

**BENSON, J.—**

I

*Statement of the Case*

Appellant David P. appeals from a judgment of the San Francisco Juvenile Court terminating his parental rights under Civil Code section 232, subdivision (a)(7). We reverse the judgment. We hold the trial court committed reversible error in denying appellant the right to contest charges of

physical and sexual abuse of his two minor children where that charge had been placed in issue at the termination hearing and where physical and sexual abuse had not been adjudicated in earlier proceedings by clear and convincing evidence but only by a preponderance of the evidence. We reach this conclusion because respondent's burden of proof in the parental termination proceeding was clear and convincing evidence and the previous adjudication of the issue by a preponderance of evidence will not collaterally estop relitigation of the issue.

## II

### Statement of Facts

A. *Proceedings occurring prior to the Civil Code section 232 trial to terminate parental rights.*

Nathaniel and Jennifer P., the minor childr·.n of appellant David P., were first taken into protective custody on June 17, 1984. The children, then age five and three respectively, were found by authorities alone on a traffic island at Army and Valencia Streets in San Francisco. On June 19, 1984, a dependency petition was filed by the department of social services (DSS) alleging that the minor children came within the provisions of Welfare and Institutions Code section 300, subdivision (a),[1] in that: "Said minors are in need of proper and effective parental care and supervision and have no parent or guardian actually, or capable of, exercising such care and supervision. . . ." On July 2, 1984, a jurisdictional hearing took place, the petition was sustained and the court specifically found the minors coming within the provisions of section 300, subdivision (a).

On October 17, 1984, the matter came before the court "for disposition pursuant to Welfare and Institutions Code section 300a." The court found that an award of custody to the parents would be detrimental to the children and award to a nonparent was required in order to serve the best interest of the children, and there existed a substantial danger to the physical health of the minors or would be if the minors were returned home. The court ordered the minors dependent children and they were committed to the care and custody of DSS for placement, planning and supervision. Appellant was given a number of conditions for reunification with his children.

On October 10, 1985, DSS filed an amended petition under section 300, subdivision (d). This petition accused the father of physically and sexually

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise specified.

abusing his children. Among the facts offered in support of this amended petition were the following: that about September 30, 1984 [*sic*],[2] both children told their foster parents, Sheila Koren and Ilaine Levine, that David P. sexually abused Jennifer; about October 1, 1985, both children reported sexual abuse to a DSS staff member; Jennifer's therapist reported that Jennifer displays behavior indicative of sexual victimization; on October 7, 1985, Nathaniel reported sexual abuse to Jennifer and himself by his father; Nathaniel and the children's mother reported instances of physical abuse; and David P. has a criminal history having been charged previously with oral copulation and sexual assault of a minor, which resulted in a plea bargain and a plea of guilty of battery.

On October 18, 1985, the children's therapist, Janice DeCovnick, Ph.D., recommended to the social worker that the children's visits with their father be discontinued. The court ordered the father's visits with his children terminated.

A contested jurisdictional hearing occurred and resulted in an order dated January 24, 1986. The court found that five of the six counts alleged to be true, that the minors came within the provisions of section 300, subdivision (d), and ordered the matter set for a dispositional and permanency planning hearing. Dependency was renewed.

Following a series of continuances and other matters not germane to the issues before us, a contested joint dispositional and permanency planning hearing, the latter under section 366.25, took place on May 21, 1986.

On June 17, 1986, the court signed and issued a form order entitled "Decision on PPH (Permanency Planning Hearing) and Disposition." The court found that return of the children to the parents would create a substantial risk of detriment to the physical or emotional well being of the children (§ 366.2, subd. (d)), that the children could not be returned to the physical custody of their parents, that there was not a substantial probability that the children will be returned to the parents in six months (§ 366.25, subd. (d)) and that the children are adoptable. The court ordered, inter alia, that dependency be renewed, that the children were to reside in out-of-home placement, that adoption be the permanency plan, and the city attorney was to initiate an action to declare the minors permanently free from parental control pursuant to Civil Code section 232. (§ 366.25, subd. (d).)

Accompanying the form order described immediately above, is a typewritten document signed by the court and dated June 17, 1986, in which the

---

[2] The date most probably is a typographical error and should have been 1985 since the children were still at the emergency shelter in September 1984.

court sets forth findings: ". . . by clear and convincing proof that: The minors cannot now be returned to the physical custody of either parent; that the prospective resumption of contact by the minors with their parents is of questionable benefit to the minors and is based upon future psychotherapeutic considerations; and that, therefore, there is not a substantial probability that the minors will be returned to either parent within six months. The court further finds that the minors are adoptable; and that adoption of the minors is the permanent plan in their best interests."

B. *The Civil Code section 232 trial to terminate parental rights.*

The trial to terminate parental rights commenced on March 12, 1987. The minors' social worker testified to their history. Nathaniel and Jennifer were first taken into protective custody in June 1984. Nathaniel was then five years of age and Jennifer was three. They had been cared for by their father since September 1983. The children were found by San Francisco Police Officers alone on a traffic island at Army and Valencia Streets at about 8 p.m. on June 17, 1984. They told the officers they were on their way to visit their baby-sitter. They were taken to a shelter where they made statements that they had been left alone by their father. They also said their father hit and physically abused them.

From August 1984 through October 1984, the children received therapy at the Child and Adolescent Sexual Abuse Resource Center in San Francisco General Hospital where they were referred because of suspected sexual abuse. The center's therapist confirmed that the children had been physically abused and possibly sexually abused. She concluded they were in need of long-term psychotherapy.

The children left the emergency shelter for placement in a foster home. The children proved difficult to handle and were soon moved to a second foster home. DSS then attempted to place the children in its "Fost/Opt" program in August 1984. This program serves children whose reunification with a parent might not be likely. After preplacement visits among the potential Fost/Opt parents and the children, the prospective parents refused the children on the grounds the children were extremely disturbed and Jennifer shrank from the father figure in the home.

The children were then recommended for therapeutic placement. DSS had no such home available which could take both children. Sheila Koren and Ilaine Levine then came forward and expressed an interest in the children. They had been foster parents previously with Alternative Family Services and were active with Foster Parents United. The children were placed in this home on November 21, 1984. Although the home was

classified as a regular foster home, the home functioned as a therapeutic home in that Sheila Koren had some background in human services and had worked with clients so that she possibly could have been declared a therapeutic parent.

Janice DeCovnick, Ph.D., a licensed clinical psychologist, also testified at the termination hearing. She first evaluated Nathaniel and Jennifer in July 1985 and since then has provided weekly therapy to both children. Between July and October 1985, the children alternated visits with their parents, one week with their mother and the next with their father. The children regressed shortly before and after these visits, their behavior becoming very chaotic and out of control.

The first report of sexual abuse by the father came to the therapist from the foster parents. The therapist, however, did not believe the children had been "coached" by the foster parents to make this report because the report was consistent with the symptoms the children exhibited and the manner of the children's play during therapy sessions. Also, "coached" stories usually do not remain consistent.

The therapist was not surprised when, questioning Nathaniel, he reported he and his sister had been sexually abused. Jennifer had seemed preoccupied with sexual matters during her sessions with the therapist. Nathaniel had exhibited signs of physical abuse but it was less clear to the therapist whether he had been sexually abused. After Nathaniel spoke about sexual abuse by his father, the children told the therapist they did not want to see their father again, that they were angry with him and very frightened he would retaliate.

After the visits with their father were stopped, the children's behavior calmed down. Nathaniel expressed his relief but Jennifer did not. After the sexual abuse was revealed by Nathaniel, Jennifer began to regress in her behavior. She became enuretic and encopretic. The therapist believed Jennifer's behavior resulted from the fact she was not yet ready to reveal the sexual abuse.

The therapist gave her opinion that parental rights should be terminated. She based her opinion on the fact the children told her they hated their father and they had become quite attached to their foster parents. In her opinion, it would be psychologically devastating to return the children to their father where they would expect all kinds of retaliation and punishment. She also based her opinion on the fact the children reported to her that they were molested by their father.

Michele Rutherford, the children's social worker, testified to the reunification efforts made by DSS and the father's performance of the conditions of reunification. The father remained in contact with the social worker. He participated in individual therapy but he was not successfully engaging in the therapy and was resistant to the therapeutic process. He attended therapy at the Center for Special Problems as a condition of his probation after his plea bargain to the charge of battery. He was originally assigned to an incest group but when he objected, he was allowed to attend individual therapy. He attended this therapy until May 15, 1985, when his probation expired. He attended 14 visits with his children but missed 9. The social worker believed the father did not successfully complete parenting classes, although he attended two courses. The social worker supervised the father's visits with his children and observed that he repeatedly showed an inability to respond to the children's needs. During these visits, the children's behavior was chaotic and they misbehaved. The father was unable to deal appropriately with this behavior, insisting that his children were normal and did not have any problems. The father signed a first service agreement consenting to perform the conditions for reunification. He refused to sign a second such agreement because he objected to attending more therapy. The social worker also expressed the opinion that reunification of the father with the children would not be in the best interests of the children. This opinion was based upon her observation of his visits with the children and upon her work with the father.

The children's mother testified she approved of the plan to have the foster mothers adopt the children. She agreed to relinquish her rights provided the father's rights were terminated. The children's parents had separated in February 1983, reconciled in May of 1983, and separated finally in September 1983.

David P. testified he was employed full-time but that his present wife could care for the children if reunification were allowed. He was again in therapy with Dr. Joyce Sutton. He felt he had made all the scheduled visits with his children that he could make.

David P. sought to testify that he had not physically or sexually abused his children. Counsel for DSS objected that he could not go behind the findings already made after hearing on the section 300, subdivision (d) petition. The same objection was made by counsel for DSS to questions on cross-examination of the social worker about whether someone else had sexually abused the children. The court sustained the objections on the grounds it could not "go behind another Superior Court judge's findings." The court did allow the father to deny, for the record, that he had

physically or sexually abused the children with the understanding that those issues had already been decided.

Sheila Koren, one of the foster mothers, testified that when the children were first placed in the foster home, Jennifer was very difficult to handle and Nathaniel was distant and frightened. She felt that although both are still disturbed, they had come a long way. She emphasized she wished to adopt the children.

The court sustained the Civil Code section 232 petition making the following findings: the children had been out of the home for more than one year; reasonable services were provided or offered to the parents and despite the availability of those services, return of the children to the parents would be detrimental to each child; and David P. had failed to respond in an appropriate manner to those services and was not likely to meet the requirements within six months or within any reasonable time. The court thereupon stated: "Therefore, there is clear and convincing evidence before this Court that to return the minors to (David P.) would be clearly detrimental to the minors; and, therefore, the court orders that any parental rights or obligations of (David P.) to the children is hereby terminated under section 232."

## III

### *Appeal*

### 1. *Collateral Estoppel*

■ On appeal, the father contends the court erred in ruling that the adjudication made in the section 300, subdivision (d) proceeding, that he physically and sexually abused his children, precluded him from offering contrary evidence on these issues in the present proceeding under Civil Code section 232. He argues that in a section 300 case, the standard of proof is by a preponderance of the evidence (*In re Jennifer V.* (1988) 197 Cal.App.3d 1206, 1211 [243 Cal.Rptr. 441]; § 355), while in a proceeding to terminate parental rights under Civil Code section 232, the petitioner must prove its case by clear and convincing evidence. (*In re Angelia P.* (1981) 28 Cal.3d 908, 919 [171 Cal.Rptr. 637, 623 P.2d 198]; *In re Matthew S.* (1988) 201 Cal.App.3d 315, 320 [247 Cal.Rptr. 100].) Because of these differing standards of proof, appellant asserts, he could not be collaterally estopped from relitigating the issues of abuse of his children.

■ Appellant did not raise at trial the argument that differing burdens of proof prevented the application of the doctrine of collateral estoppel.

Respondent does not object that the issue was not raised at trial. We will decide the issue since it presents a pure question of law. (*Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, 855-856 [237 Cal.Rptr. 282]; *State of California* ex rel. *Public Works Bd.* v. *Bragg* (1986) 183 Cal.App.3d 1018, 1023 [228 Cal.Rptr. 576].)

Before proceeding to the issue, however, we must observe that neither the appellant nor respondent's briefs cited or discussed section 361, subdivision (b) and its possible application to this case. That section provides in part: "No dependent child shall be taken from the physical custody of his or her parents . . . unless the juvenile court finds clear and convincing evidence of any of the following: . . . ." It was only upon filing a petition for rehearing that respondent cited and argued section 361, subdivision (b) and then in a context that can fairly be described as factually disingenuous.[3]

 Appellant relies on *One Lot Emerald Cut Stones* v. *United States* (1972) 409 U.S. 232, 235 [34 L.Ed.2d 438, 442, 93 S.Ct. 489] [acquittal in prior criminal action on same facts does not collaterally estop government in civil forfeiture action because of difference in burden of proof in criminal and civil cases]; *In re Coughlin* (1976) 16 Cal.3d 52, 58-59 [127 Cal.Rptr. 337, 545 P.2d 249] [by reason of the difference in standards of proof in criminal and other actions, a prior acquittal in a criminal proceeding does not bar consideration of evidence presented at the criminal trial in a probation revocation hearing]; and *People* ex rel. *Gow* v. *Mitchell Brothers' Santa Ana Theater* (1980) 101 Cal.App.3d 296, 306 [161 Cal.Rptr. 562] [judgment pending on appeal that films are not obscene does not collaterally estop the People from seeking to enjoin exhibition of the films].

DSS responds that the scope of a proceeding under Civil Code section 232 differs from that of a proceeding to make a child a dependent of the court (*In re Shannon W.* (1977) 69 Cal.App.3d 956, 962 [138 Cal.Rptr. 432]) and that at the stage of proceedings concerning parental rights, any errors in earlier juvenile proceedings are moot. (*In re Sarah F.* (1987) 191 Cal.App.3d 398, 403 [236 Cal.Rptr. 480].) DSS also asserts the proper focus of a termination proceeding is the current failure of the parent to adequately comply with efforts at reunification, thus evidence of appellant's past acts was not relevant and the issue of molestation was not determinative of the court's decision in the termination proceeding. Respondent's original arguments miss the mark.

 Initially we point out that although the two proceedings differ in scope, this is not determinative of whether collateral estoppel applies.

---

[3] Nor do we condone the extraordinary procedure adopted by respondent in petitioning the Supreme Court to depublish the original opinion in this case while this court retained jurisdiction to grant rehearing, which in fact it had done.

Differences in the proceedings may bar the application of res judicata. "The doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 188, pp. 621-622, italics in original.) However, "A second action between the same parties on a *different cause of action* is not precluded by a former judgment. . . . But the first judgment 'operates as an *estoppel or conclusive adjudication* as to such issues in the second action as were *actually litigated and determined in the first action.*' " (*Op. cit. supra,* § 253 at p. 691, italics in original; *Lockwood* v. *Superior Court* (1984) 160 Cal.App.3d 667, 672 [206 Cal.Rptr. 785].) Collateral estoppel is sometimes aptly referred to as issue preclusion. In *Lockwood,* Division Five of this court held that where a juvenile court found no child abuse by the parents in a dependency proceeding, the doctrine of collateral estoppel applied to bar prosecution on a criminal charge of felony child abuse based on the same evidence. (*Id.* at p. 672.)

■ DSS fails to address appellant's argument that the differing standards of proof bar the application of collateral estoppel. We find appellant's argument persuasive. In *People* v. *Sims* (1982) 32 Cal.3d 468, 485 [186 Cal.Rptr. 77, 651 P.2d 321], the court recognized the doctrine of collateral estoppel may not apply where two proceedings have differing burdens of proof. In *Sims,* the situation presented was the opposite of that presented here. The county had failed to prove its allegations by a preponderance of the evidence in the first civil proceeding. The court held collateral estoppel applied to bar the People from prosecuting the same issue in a criminal proceeding. Also, we observe that section 28, subdivision (4) of the Restatement Second of Judgments states the collateral estoppel doctrine does not preclude relitigation of the issue where "*the adversary has a significantly heavier burden than he had in the first action.*" (Italics added.)

Several cases have discussed whether the doctrine of collateral estoppel precludes a parent from denying the truth of findings of the dependency proceeding. All but one of these cases, however, were decided before our Supreme Court determined in *In re Angelia, supra,* 28 Cal.3d at p. 913, that the clear and convincing evidence standard applies to all proceedings brought under Civil Code section 232, subdivision (a), not just proceedings under subdivision (a)(7).[4] In one of the pre-*Angelia* cases, *In re Carmaleta*

---

[4] The standard of proof in proceedings brought under Civil Code section 232, subdivision (a)(7) was initially set by the Legislature as proof beyond a reasonable doubt. Subdivision (a)(7) was amended in 1976 to substitute "by clear and convincing evidence" for "beyond reasonable doubt." In 1977 it was amended again to change the burden back to "beyond reasonable doubt." An urgency measure was enacted in 1978 again amending the section to provide for a "clear and convincing evidence" standard. At the time of the instant termination proceeding, subdivision (c) of Civil Code section 232 read: "A finding pursuant to this section

*B.* (1978) 21 Cal.3d 482, 493-494 [146 Cal.Rptr. 623, 579 P.2d 514], the court stated the principles of collateral estoppel "may" preclude the parent from denying the truth of the findings of the dependency proceeding that she failed to protect the children from abuse by their father. However, the case also held that inquiry into the issue of cruelty or neglect in the termination proceeding was not foreclosed by the order making the children dependents of the juvenile court. The court did not discuss the applicable burdens of proof but relied on two cases which held that the court, in a termination proceeding, was doing more than just finalizing the dependency determination. (*In re Morrow* (1970) 9 Cal.App.3d 39, 54 [88 Cal.Rptr. 142]; *In re Williams* (1955) 133 Cal.App.2d 515, 518 [284 P.2d 510].)

In *In re Terry E.* (1986) 180 Cal.App.3d 932, 949-950 [225 Cal.Rptr. 803], the case decided *after Angelia,* the court relied on the language contained in *In re Carmaleta B., supra,* 21 Cal.3d at page 493, stating that the parent "may be precluded by reasons of collateral estoppel from denying the truth of the findings of the dependency proceeding that she was incapable of exercising care or control over her children." The *Terry E.* court held the parent was entitled to have the circumstances leading to the dependency order reviewed in the light of subsequent events. The case, however, fails to discuss either burden of proof or the 1983 amendment to Civil Code section 232 making all proceedings under the section subject to the clear and convincing evidence standard.

With that background we return to the record in this case. The record is quite clear that at no time during the proceedings which preceded the section 232 trial did the court find by clear and convincing evidence that appellant had physically or sexually abused the children. The 1984 dependency proceeding was initiated under section 300, subdivision (a). At the jurisdictional hearing, where the evidentiary standard is preponderance of the evidence (*In re Jennifer V., supra,* 197 Cal.App.3d 1206, 1211; § 355), the court specifically found the minors coming within the provision of section 300, subdivision (a), i.e., they were without a parent willing, capable or actually exercising proper and effective parental care and control. At the 1984 dispositional hearing pursuant to section 300, subdivision (a), the children were taken from the physical custody of appellant based upon a finding of substantial danger to the physical health of the minors under section 361, subdivision (b)(1). There was no pleaded allegation or finding under section 361, subdivision (b)(4) relating to removal of the children for reasons of sexual abuse. Section 361, subdivision (b), requires a finding of clear and convincing evidence to support the enumerated grounds for removal.

shall be supported by clear and convincing evidence." (Stats. 1978, ch. 429, § 23, ch. 1269, §§ 1-3; Stats. 1986, ch. 1122, § 1; *In re Angelia P., supra,* 28 Cal.3d at p. 921.)

The amended petition, filed in 1985 pursuant to section 300, subdivision (d), was brought on for jurisdictional hearing in January 1986. Section 300, subdivision (d), as it then existed, defined a dependent as one "whose home is an unfit place . . . by reason of neglect, cruelty, depravity or physical abuse of either of his parents. . . ." The section 300, subdivision (d) petition was sustained, again, under an evidentiary standard of preponderance of the evidence.

The sustained 300, subdivision (d) petition was then set for a "joint disposition and permanency planning hearing." The transcribed record of this contested proceeding which took place in May 1986, is *not* a part of the record on appeal. Neither the form "Decision on PPH & Disposition" nor the typewritten document accompanying it, both signed by the court on June 17, 1986, contains a finding that appellant physically or sexually abused the children, nor do these documents in any manner refer to physical or sexual abuse by appellant. Rather, the findings track the language of section 366.25 dealing with permanency planning hearings, specifically, that the minors cannot now be returned to the physical custody of either parent (§ 366.25, subd. (c)); that prospective resumption of contact between minors and parents is of questionable benefit to the minors (§ 366.25, subd. (d)(1)(A)); that no substantial probability exists that minors would be returned to either parent within six months (§ 366.25, subd. (c) & (d)); and that the minors are adoptable and that adoption of the minors is the permanent plan in their best interests (§ 366.25, subd. (d)(1)).

We hold it was error for the court to conclude that collateral estoppel barred the father from producing evidence he had not sexually or physically abused his children since DSS previously had prevailed on that issue only under the lesser standard of preponderance of the evidence. The father is entitled in the termination proceeding to have the issue redetermined under the standard of clear and convincing evidence.

DSS asserts that the issue of molestation was not determinative of the court's decision. The record does not support that contention. The court's findings do not refer to any physical or sexual abuse by the father. It may be, however, there is no such finding because the court had already ruled the sexual and physical abuse was established. We cannot ascertain whether the court relied on the molestation in finding that it would be detrimental to the children to return them to the father. ■ It is settled that an order terminating parental rights must rest on present circumstances as well as past acts. (*In re Carmaleta B., supra,* 21 Cal.3d at p. 493; *In re Matthew S., supra,* 201 Cal.App.3d at p. 322.) ■ "In a case such as this where fundamental rights are affected by the exercise of discretion by the trial court, we recognize that such discretion can only be truly exercised if there is no

misconception by the trial court as to the legal basis for its action. Thus, where, as here, some of the grounds for the trial court's action have been determined on appeal to be . . . unsupported, the matter should be remanded for the trial court's redetermination of the ultimate issue on the proper grounds." (*In re Carmaleta B., supra,* at p. 496.)

## 2. *Hearsay Statements of the Children*

Our conclusion makes it unnecessary for us to address appellant's argument there was not substantial evidence to support the judgment. Because the matter will be retried, however, we speak briefly to appellant's well-taken argument that it was error to admit testimony by the children's psychologist concerning out-of-court statements made by the children to her.[5] The reporter's transcript provides the following scenario:

*Question (by DSS Counsel)*: "During the periods of time from October to the present, have the minors indicated *their wishes to you in terms of being reunified* with their father?" (Italics added.)

*Answer:* "Yes, they have."

*Question:* "And what have they indicated?"

*Answer:* "Nathan has repeatedly stated that he hates his father and never wants to see him again. Jenny has also stated that she hates her father, is very, very, very angry with him and only wants to see him one more time in court. And when asked why she wants to see him in court, she has said various things, such as; 'so I can punch him. So I can punch him in the face. So I can kill him.' And as of Monday, she said, 'and tell the Judge I want daddy David to go to jail.' "

*Mr. Newhouse (David P.'s Counsel):* "Excuse me, your honor. I'd like to move that the answer be stricken. I mean it's blatant hearsay. It's offered for something more than the opinion. It's trying to convey the testimony of the children through the doctor."

*The Court:* "My understanding of 232 is that the wishes of the children are the relevant factor. They should be considered. Clearly, they don't have

---

[5]Respondent's reply to this argument is not responsive. Respondent's assertion that the statements were admitted as a basis for the therapist's opinion, refers to a different portion of the transcript where the court did allow the therapist to testify to the children's attitude toward their father as demonstrated by their *behavior* rather than statements made to the therapist. This misconception was unfortunately repeated in respondent's petition for rehearing and again in the inappropriate letter directed to the Supreme Court.

any legal standing to decide things like jail, but I think how the children feel about this is very relevant, and I will allow that in for that reason."

While the court was correct that the wishes of the children are relevant in a parental termination proceeding and should be considered, we are aware of no exception that would allow those wishes to be admitted in evidence in violation of the rule against hearsay. Moreover, the Legislature with appropriate sensitivity to the various pressures which may be visited upon a minor involved in a 232 proceeding has, in subdivision (b) of that section, established a procedure whereby the *testimony of the minor* may be taken in chambers where the court determines it is necessary to *ensure truthful testimony,* or the minor is likely to be *intimidated* by a formal courtroom setting, or the minor is *afraid to testify* in front of his/her parents.

Appellant's hearsay objection should have been sustained.

## IV

### *Disposition*

The judgment is reversed and the matter remanded to the trial court for retrial.

Smith, Acting P. J., and Peterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 6, 1989.