Opinion
SILLS, P. J.
In May 1994, five-month-old Sylvia and one-and-one-half-year-old Michelle were taken into custody after their mother, Diana, was arrested for child endangerment and possession of illegal drugs. The father, Octavio, was not living with the children at the time. In September 1994, the children became dependents of the juvenile court after dependency petitions were sustained based on the mother’s arrest and neglect, and the father’s failure to have protected the children from that neglect.
Octavio had been arrested for spousal abuse in 1991. In October 1995, about two months prior to the eighteen-month review, he was arrested for spousal abuse again, after a physical altercation with Diana. The 18-month review was held in early January 1996. Reunification services were terminated and the case was set for a permanency planning hearing under section *562 366.26 of the Welfare and Institutions Code.[1] In mid-January 1996, however, the Orange County District Attorney’s office, for a reason not disclosed in the record, dismissed the spousal abuse charges against Octavio.
In February 1996, Octavio filed a request, pursuant to section 388, seeking to modify the order terminating reunification services, based on the dismissal of the spousal abuse charges. The petition was denied, and denied without the court setting a special hearing on the subject. In this appeal, Octavio now argues that he should have received at least a hearing on whether the dismissal was a change in circumstances which would have warranted renewed reunification efforts.
Octavio’s argument is meritless. Six years ago, in In re Benjamin D. (1991) 227 Cal.App.3d 1464 [278 Cal.Rptr. 468], this court held that evidence of spousal abuse was relevant on the question of whether the child of the marriage was properly within the jurisdiction of the juvenile dependency court. “Both common sense and expert opinion,” we observed, “indicate spousal abuse is detrimental to children.” (Id. at p. 1470, fn. 5; see also In re Heather A. (1996) 52 Cal.App.4th 183, 195 [60 Cal.Rptr.2d 315] [recognizing that spouse battering is “secondary abuse” which may sow in children the seeds of psychological predisposition to be victims of domestic violence]; Fields, The Impact of Spouse Abuse on Children and Its Relevance In Custody and Visitation Decisions in New York State (1994) 3 Cornell J.L. & Pub. Pol’y 221, 228 [“Studies show that violence by one parent against another harms children even if they do not witness it.”]; Cahn, Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions (1991) 44 Vand. L.Rev. 1041,1055-1056 [“First, children of these relationships appear more likely to experience physical harm from both parents than children of relationships without woman abuse. Second, even if they are not physically harmed, children suffer enormously from simply witnessing the violence between their parents. . . . [^Q Third, children of abusive fathers are likely to be physically abused themselves.” (Fns. omitted.)].)
The mere fact that a prosecutor does not seek criminal charges for domestic violence hardly establishes that it is in the best interest—or even that it appears that it might promote the best interest—of the dependent child to undo an order terminating reunification services.[2] The district attorney’s office may have had reasons for not prosecuting Octavio wholly independent *563 from whether he actually attacked his spouse. The fact a prosecutor does not bring charges or does not secure a conviction for spousal abuse does not make it “appear” the offender has reformed and that it would be in the best interests of any children involved to undo the termination of reunification services.
As noted in In re Nathaniel P. (1989) 211 Cal.App.3d 660, 670 [259 Cal.Rptr. 555], “. . . the doctrine of collateral estoppel may not apply where two proceedings have differing burdens of proof.” (Citing People v. Sims (1982) 32 Cal.3d 468, 485 [186 Cal.Rptr. 77, 651 P.2d 321].) Thus a failure to convict a parent of spousal abuse in a criminal proceeding—where the burden is a high one—“beyond a reasonable doubt”—-does not establish that the parent did not commit spousal abuse for purposes of a proceeding where the burden is lower—“preponderance of the evidence”—as it is in dependency cases. All that can be legitimately inferred from the district attorney’s decision not to prosecute was that Octavio might not have done something which, given his past record of spousal abuse, otherwise rendered hopeless any chance of reunification.
Diana presents two issues of her own. One, she claims that the juvenile dependency court erred at the permanency planning hearing by not finding she had maintained regular visitation and contact such that the minors would benefit from continuing the parental relationship. (See § 366.26, subd. (c)(1)(A).) The answer to this point is that there is substantial evidence in the record that Diana’s relationship with the children was more of a peer than a parent. (See In re Beatrice M. (1994) 29 Cal.App.4th 1411, 1420 [35 Cal.Rptr.2d 162] [in rejecting identical argument, court noted that the relationship of the minor children was “not a parental one” but more “akin to that of an extended family member”].)
Diana’s final argument is a novel one, but cannot help her in this case as now postured. She argues that she should be entitled to postadoption visitation with her children. Diana acknowledges that her position is not now the law in California. (See Huffman v. Grob (1985) 172 Cal.App.3d 1153, 1158 [218 Cal.Rptr. 659] [“Such a result is contrary to the policy of providing adopted children with stable homes free of protracted or repeated litigation concerning custody or visitation.’’].) Rather, she invites us to be the first court to change the rule.
Not now, and maybe not ever. For the moment it is enough to say that the argument should have been made to the juvenile dependency court, but was not. Whether “open adoption” could ever be a workable idea after a termination of parental rights in a juvenile dependency proceeding would certainly depend on the particular facts and circumstances of the case. It is not *564 the sort of issue which is susceptible to meaningful consideration in the abstract for the first time on appeal.
The judgment is affirmed.
Wallin, J., and Rylaarsdam, J., concurred.

All statutory references are to the Welfare and Institutions Code.

Read literally, section 388 says that if it is apparent that the best interests of the child “may be promoted” by the request, then the juvenile dependency court “shall” order a hearing.