[No. G028166. Fourth Dist., Div. Three. Nov. 15, 2001.]

In re JESSICA C. et al., Persons Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
REMBERTO C., Defendant and Appellant;
JESSICA C. et al., Appellants.

**COUNSEL**

Janette Freeman Cochran, under appointment by the Court of Appeal, for
Defendant and Appellant Remberto C.

Susan Bookout, under appointment by the Court of Appeal, for Minors.

Laurence M. Watson, County Counsel, and Ward Brady, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**SILLS, P. J.—**

### I. INTRODUCTION

This is an unusual dependency case in which there are appeals from opposite sides. Remberto, the father of five children with his now estranged wife, Kimberly, appeals from an order adjudicating him to have committed sexual abuse on his eldest daughter. Specifically, he was found to have fondled her breasts and asked her to take pictures of him nude. The five children, by contrast, appeal from the same order, because the trial court found untrue other allegations of sexual abuse, including an allegation that Remberto had actual sexual intercourse with the eldest daughter.

The two appeals raise several disparate issues, but one central problem predominates: the nature of the pleadings in juvenile dependency cases. As we explain below, the findings that emerge in the wake of juvenile dependency petitions must be construed in terms of their actual substance; variations between what was alleged and what was proved at the hearing are governed by the established civil law concerning amendments according to proof. Accordingly, we affirm the order adjudicating the children to be within subdivision (d) of section 300 of the Welfare and Institutions Code,[1] but reverse it so far as the trial court did not consider one particular allegation of sexual abuse because it erroneously denied a motion to amend the pleading according to proof.

### II. HISTORY OF THE CASE

Remberto and his wife Kimberly have five children, whose ages in March 2000 were 11, 8, 7, 4, and 2. The children were detained in August 1999 based on allegations of physical abuse, specifically Remberto's having struck the children numerous times with his hands, belts, belt buckles and "other objects," including a board. But there were also allegations of sexual abuse by Remberto against Jessica, the eldest daughter, who told a social worker in May (in an interview precipitated by domestic violence) that Remberto had touched her on her "private parts" and had once, while drunk, rubbed her chest under her clothing.

---

[1]All statutory references in this opinion are to that code unless otherwise specified.

In November, the court (not the same judge as the one who made the order from which these appeals have been taken) sustained the jurisdictional petition under subdivisions (a) (serious physical harm inflicted nonaccidentally) and (b) (serious physical harm as a result of inadequate supervision) of section 300, but *not* subdivision (d) (sexual abuse). In fact, the trial judge rejected Jessica's testimony, saying, "I think (she) has been coached by more than one person" and "I can't find that there was any sexual intent." In the wake of the jurisdictional order, the parties stipulated to a dispositional order in which the children were placed with their mother Kimberly, who was now separated from Remberto; Remberto would have only monitored visitation.

In April 2000, however, Jessica was interviewed by members of the child abuse service team (CAST). She described to the interviewers various kinds of sexual abuse by Remberto in addition to the touching which she had mentioned in the April 1999 interview. These acts included french kissing, exposure to pornography, and sexual intercourse. A physical exam "neither negated nor substantiated sexual abuse." A psychology evaluation was similarly inconclusive.[2]

The interview resulted in the filing by the social service agency, on May 3, 2000, of a "subsequent" petition pursuant to section 342. Because the precise nature of the allegations plays a central role in the legal analysis of the case, we set them forth in the margin, verbatim.[3] All the acts alleged occurred prior to the August 1999 detention.

---

[2]In contrast to the psychologist in *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1745 [53 Cal.Rptr.2d 687], who actually came to a legally useful conclusion, the psychologist here ducked the issue. Most of her report was a retelling of what members of the family had told her. Her only conclusion on the subject of whether Remberto had molested his children was this: "Unfortunately, it can be extremely difficult to ascertain and evaluate all factors surrounding allegations of child sexual abuse. At the present time, [Remberto's] *visitations* with his children need to remain monitored by a reliable adult."

Clearly, as suggested by the reference to monitoring immediately following the reference to sexual abuse, the psychologist was not willing to sign off on Remberto's probably *not* having committed child molestation. But then again, a paragraph later, the psychologist downplayed the probability of sexual abuse, when she wrote: "Finally, to minimize the risk of Jessica adopting, identifying with or escaping into the role of a victim, any therapy and counseling for her must *not* be focused on the alleged events of sexual molestation." (Original italics.)

One of the reasons psychologists play an important role in dependency jurisprudence is, as pointed out by Justice Mosk in *In re Jasmon O.* (1994) 8 Cal.4th 398, 430 [33 Cal.Rptr.2d 85, 878 P.2d 1297], so that courts have something more to go on than their own "arbitrary decisions." Here, nothing was provided.

[3]All these allegations appeared under a heading referring the reader to subdivision (d) of section 300:

"d-1 The children's mother and father are married, although they do not currently reside together. The children are under a Family Maintenance Case Plan with their mother and an Enhancement Plan has been offered to the children's father.

"d-2 The child, Jessica, disclosed during a CAST interview on April 24, 2000, that her father had sexually abused her on numerous occasions prior to August 18, 1999. Such sexual

The hearing on the subsequent petition began in July 2000, with the court setting a briefing schedule on the question of res judicata. In August the court decided that, under *Blanca P. v. Superior Court, supra,* 45 Cal.App.4th 1738, it should treat the section 342 subsequent petition as a section 388 modification petition. Counsel stipulated to waiving any defects in so proceeding, and the court took testimony. Jessica testified that, at various unspecified times since she was nine, she had sexual intercourse with her father, but that on one occasion she was unsure if there was any penetration. She also testified that he showed her a pornographic magazine, that he asked her to take pictures of him naked, that he asked her to masturbate him, that he would try to french kiss her, and that he had put his hand down her shirt and rubbed her breasts. Remberto did not testify.

---

abuse reported by the child included the child's father penetrating the child's vagina with his penis. The child stated that this had been occurring from approximately age nine and happened almost daily while the mother was at work.

"d-3 The child, Jessica, disclosed that her father exposed her to pornographic magazines on numerous occasions and once exposed her to a pornographic video prior to August 18, 1999.

"d-4 The child, Jessica, reported that on a few unspecified occasions her father requested that she take photographs of him without his clothes on.

"d-5 The child, Jessica, reported that on numerous occasions prior to August 18, 1999, her father would ask her to masturbate him using her hand.

"d-6 The child, Jessica, reported that on numerous occasions prior to August 18, 1999, her father would fondle her breasts with his hands, with skin to skin contact.

"d-7 The child, Jessica, reported that on numerous occasions prior to August 18, 1999, her father would french kiss her, placing his tongue in her mouth.

"d-8 The child, Jessica, reported that on numerous occasions prior to August 18, 1999, her father would tell her that she was not to tell anyone about the sexual abuse. Further, the child stated that her father would tell her that if she told of the abuse, his 'thing' would be cut off and he would go to jail and that she would be taken away.

"d-9 The child's sibling, Amanda, disclosed during an informal interview at CAST on April 24, 2000, that she had witnessed her sister Jessica and her father on the couch together on numerous occasions. Amanda stated that almost daily prior to August 18, 1999, she had been told by her father to take her brothers and sisters outside or into a bedroom to watch a movie, while her mother was at work. The child, Amanda, stated that on approximately ten occasions, she walked into the kitchen area to get cookies for her siblings and witnessed her father and sister Jessica together on the couch. The child, Amanda, stated that sometimes they were lying next to each other, sometimes Jessica was lying on top of her father, and sometimes her father was seen lying on top of Jessica. The child, Amanda, stated that each time that she saw them together on the couch, both Jessica's and her father's clothes were on. The child, Amanda, reported that her father would tell her that he and Jessica were 'wrestling.' The child, Amanda, stated that it did not look like her father and Jessica were wrestling, but looked like in the movies 'going on top of each other and stuff.'

"d-10 The children's mother knew or reasonably should have known of the sexual abuse of the child, Jessica, when the mother was informed of the allegations by Emergency Response Social Worker Ceresa Salter, and when the mother made a police report to La Habra Police Department with her concerns regarding the sexual abuse of the child, Jessica. Yet, the children's mother repeatedly failed to protect the child, Jessica, and her siblings from further sexual abuse when she allowed the child and her siblings to have contact with their father, Remberto C[.]"

The trial judge did not believe most of Jessica's allegations, but did believe two of them. Specifically, he found that there was "sexual abuse pursuant to these four allegations," and specified d-1, d-4, d-6, and d-10 of the section 342 petition. Of those four, as the reader can see from examining them in footnote 3, only two of the allegations implicated actual acts of sexual abuse: namely, that Remberto had asked his daughter to take photographs of him without his clothes on, and had fondled her breasts with his hands, with skin to skin contact. The net result of the court's findings was an order removing Jessica from her mother's home and permitting visitation by Remberto only at Jessica's consent under the supervision of a therapist.

## III.   DISCUSSION

### A.   *Remberto's Appeal*

#### 1.   *The Insufficient Evidence Argument*

Remberto presents two arguments on appeal—insufficient evidence and res judicata. We deal with the insufficiency argument now.

What Remberto's brief presents under the rubric of "insufficient evidence" is somewhat of a misnomer. Remberto devotes only minimal attention to the proposition that the record lacks evidence to support the trial court's determination that he sexually abused Jessica. He basically points to some confusion on her part as to how many times he asked her to take pictures of him naked and the exact circumstances under which he put his hand down her shirt. We may make short shrift of this aspect of his argument. Such quibbles do not render a child's testimony in a sexual abuse case unreliable. (See *In re Lucero L.* (2000) 22 Cal.4th 1227, 1249-1250 [96 Cal.Rptr.2d 56, 998 P.2d 1019].)

But another aspect of the argument is more problematic. Remberto asserts that the actual allegations in the section 342 petition could not support a finding under section 300, subdivision (d), because all that was alleged was that Jessica *reported* such and such, not that anything actually happened.

Remberto's factual premise is correct. The various allegations are all written in terms of what Jessica reported, not what Remberto actually did. The only exceptions are "d-1," which states only innocuous facts, and "d-10," which alleges that the mother "should have known of the sexual abuse of the child," but which sets forth no actual facts to support the

insinuated assumption that there was sexual abuse. The argument forces us to examine the nature of pleadings in the juvenile dependency context.

### a. *The Nature of Pleadings in Dependency Court*

The basic pleading device in a dependency case is a petition. It may be an original petition (§ 332), a subsequent petition for children who are already dependents when there are "new facts or circumstances" that bring them within a category of section 300 "other than those under which the original petition was sustained" (§ 342), or a supplemental petition when there are facts which indicate that a previous disposition is not appropriate. (§ 387.)

On occasion, appellate courts have noted with a certain shock that a dependency petition appeared to have been written by a layperson. (See *In re Fred J.* (1979) 89 Cal.App.3d 168, 177 [152 Cal.Rptr. 327]; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1137, fn. 12 [106 Cal.Rptr.2d 465].) In other contexts the preparation of court pleadings on behalf of a third party by a layperson without lawyer supervision would be the unauthorized practice of law. But a specific statute, section 325, provides that juvenile court proceedings are "commenced by the filing with the court *by the social worker*, of a petition." (Italics added.) The inference is that the social worker may actually write the document, not just take it down to the clerk's filing window.

Of course, in light of the exigencies under which dependency petitions are prepared, i.e., an urgent need to protect children who might be in real danger when the petition is filed, it is hard to imagine any other procedure. Deputy county counsel in large urban areas, often assigned to cover specific courtrooms, do not always have the time to rewrite the facts that social workers bring them.

The substantive requirements for the preparation of a dependency petition as prescribed by the Legislature are set forth in subdivision (f) of section 332. That statute requires a dependency petition to contain "[a] concise statement of facts, separately stated, to support the conclusion that the child upon whose behalf the petition is being brought is a person with the definition of each of the sections and subdivisions under which the proceedings are being instituted."

Section 356 governs what a juvenile court must do in the wake of a hearing on a petition. It provides that after hearing the evidence on a petition, the juvenile court shall make a "finding, noted in the minutes of the court, whether or not the minor is a person described by Section 300 and the specific subdivisions of Section 300 under which the petition is sustained."

In addition to making the general findings described in section 356, juvenile courts are also required, by the rules of court, to make specific findings on each of the allegations in an original, subsequent or supplemental petition. California Rules of Court, rule 1450(a) provides that if a parent "denies the allegations of the petition, the court shall hold a contested hearing and determine whether the allegations in the petition are true." A few paragraphs later, the rule states that "[i]f the court determines by a preponderance of the evidence that the allegations of the petition are true, the court shall make findings . . . [¶] The allegations of the petition are true." (Cal. Rules of Court, rule 1450(f)(3).) Conversely, "[i]f the court determines that the allegations of the petition have not been proved by a preponderance of the evidence, the court shall . . . make the following findings . . . [¶] The allegations of the petition are not proved." (Cal. Rules of Court, rule 1450(h)(3).) California Rules of Court, rule 1431 sets up the same process for subsequent and supplemental petitions. Rule 1431(d)(1) provides that for both subsequent and supplemental petitions, at the "conclusion of the hearing" the court shall find whether the allegations of the petition "are or are not true."[4]

b. *The Court Found Actual Child Abuse, Not Merely "Reports" of It*

On occasion, social workers have been known to write petitions that do not state facts showing a child falls within one of the categories (or "descriptions") set forth in section 300. The Court of Appeal has held that in such cases, in order to protect the due process rights of parents, a parent may challenge the legal sufficiency of the petition by a "motion akin to a demurrer." (*In re Fred J., supra*, 89 Cal.App.3d at p. 176; *In re Nicholas B., supra*, 88 Cal.App.4th at p. 1133; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494].)[5] And, on occasion, parents have demurred successfully to dependency petitions. (E.g., *Nicholas B., supra*, 88 Cal.App.4th at p. 1136 [allegations of emotional problems suffered by teenager were insufficient because there was no causal link to parents].)

As the *Fred J.* court explained, "It has been held specifically that '[n]otice of the allegations upon which the deprivation of custody is predicated is

---

[4]There is a curious discrepancy in the language of rule 1431(d)(1), however. Here is the applicable text: "At the conclusion of the hearing on the subsequent petition the court shall make a finding that the allegations of the petition are or are not true. At the conclusion of the hearing on a supplemental petition the court shall make findings that: [¶] (A) The *factual* allegations are or are not true . . . ." (Italics added.) Why the reference to "factual allegations" regarding supplemental petitions but only to "allegations" where subsequent petitions are concerned? For purposes of this opinion we need not ponder this precise question.

[5]Local courts sometimes explicitly provide for such "akin to a demurrer" motions by rule. (E.g., Super. Ct. Fresno County, Local Rules, rule 53.1; Super. Ct. L.A. County, Local Rules, rule 17.15; Super. Ct. Nevada County, Local Rules, rule 6.05.1.)

fundamental to due process. . . . Accordingly, a parent must be given notice of the *specific factual allegations* against him or her with sufficient particularity to permit him or her to properly meet the charge.' " (*In re Fred J., supra*, 89 Cal.App.3d at p. 175, quoting *In re J. T.* (1974) 40 Cal.App.3d 633, 639 [115 Cal.Rptr. 553], italics added by *Fred J.*)

The problem we face in the case before us is the tension between the specific factual allegations in the section 342 subsequent petition, which merely alleged reports of abuse, and the finding of the trial court, which adjudicated the children to be within subdivision (d) of section 300, an adjudication which necessarily implies *actual* sexual abuse or the real possibility of actual sexual abuse, not merely a child's *imagined* reports of it.

This tension may be resolved by reference to the stages of dependency litigation at which the petition (or subsequent petition or supplemental petition) are relevant. In the initial "pleading" stage, the role of the petition is to provide "meaningful notice" that must "adequately communicate" social worker concerns to the parent. (See *In re Fred J., supra*, 89 Cal.App.3d at p. 177.) If the parent believes that the allegations, as drafted, do not support a finding that the child is "within" one of the descriptions of section 300, the parent has the right to bring a motion "akin to a demurrer." (See generally *Fred J.,* at pp. 175-177.)

Here, for example, if Remberto really thought that the trial court would find his children to be within subdivision (d) of section 300 *merely* because his eldest daughter had "reported" abuse, he could have brought a "motion akin to a demurrer" to correct any ensuing uncertainty. (Cf. Code Civ. Proc., § 430.10, subd. (e) [pleading does not state facts sufficient to constitute cause of action] or (f) [pleading is uncertain].) Instead, he waived any defects in procedure, and litigated the merits. Indeed, in points and authorities on the res judicata issue, Remberto's lawyer construed the statements in the section 342 petition as *direct* allegations of abuse, not just reports of it.[6]

However, after a hearing on the merits has been held on the petition, the focus must necessarily be on the substance of the allegations found true by

---

[6]For example, referring to paragraph d-4 of the subsequent petition, Remberto's lawyer described it this way: "Paragraph d-4 alleged that father requested Jessica take photographs of her nude father." He did not write, "Paragraph d-4 alleged that Jessica reported that her father requested she take photographs of her nude father."

Of course, if Remberto didn't challenge the language in the subsequent petition because he was hoping to keep the issue safe for appeal, we need only remark that a court would be perfectly justified in holding that he waived the issue. The tendency of lawyers in various areas of practice to want to hide obvious errors made by the trial court so they can have a trump card on appeal is extremely lamentable, and should be resisted by the courts at every turn.

the juvenile court, not idiosyncratic particulars of the social worker's precise language. Anything less would allow parents to hold linguistic deficiencies in the petition as a kind of trump card by which they could attack a finding that a child fell within one of the descriptions of section 300, even though that finding was supported by substantial, indeed overwhelming evidence.

Here, it is fair to say—as evidenced by Remberto's own attorney's points and authorities on the res judicata issue—that the substance of the paragraphs in the section 342 petition found true by the trial court was that there was *actual* child abuse, not just the fact that a child *believed* she had been abused.[7] It follows, therefore, that the trial court's order was based on actual sexual abuse (specifically, that Remberto had requested his daughter to take photographs of him without his clothes on and that he had fondled her breasts) and therefore the children were properly adjudged to be within subdivision (d) of section 300.[8]

### 2. *The Res Judicata Argument*

■ The original petition contained allegations of sexual abuse, but the original trial judge found them not to be proved. On appeal, Remberto argues that the hearing on the second petition relitigated the same claims as the original petition, in contravention of the doctrine of res judicata.[9]

The problem of the so-called relitigation of child abuse claims has been addressed in *Blanca P. v. Superior Court, supra,* 45 Cal.App.4th 1738. The *Blanca P.* court reviewed three decisions, *In re Carmaleta B.* (1978) 21 Cal.3d·482 [146 Cal.Rptr. 623, 579 P.2d 514], *Cynthia D. v. Superior Court*

---

[7]Under subdivision (d) of section 300, courts must necessarily be interested in the *truth* of child abuse allegations; the fact that there may be an *imagined* belief in abuse is irrelevant insofar as subdivision (d) is concerned. (Cf. *Trear v. Sills* (1999) 69 Cal.App.4th 1341, 1347, fn. 16 [82 Cal.Rptr.2d 281] [noting as "disturbing" the tendency of some psychologists to ignore the truth of allegations of child abuse, and concentrate only on having patient confront memory of abuse, "imagined or not"].)

[8]In *Alysha S.,* the court borrowed from *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508], a civil moneylending case, the powerful metaphor of a ticket: "As we have said before in another context, a pleading is not merely 'a ticket to the courtroom which may be discarded after admission.'" (*In re Alysha S., supra,* 51 Cal.App.4th at p. 399.) But the ticket metaphor will travel only so far. Given that lay social workers are usually lumbered with the task of writing petitions, they must be given a certain amount of slack. If the parent believes that the petition does not "adequately communicate" the department's concerns or is otherwise misleading, the onus is on the parent to challenge the petition at the pleading stage. (See *In re Fred J., supra,* 89 Cal.App.3d at pp. 176-177.)

[9]Given that juvenile dependency cases are litigated in stages and original, subsequent and supplemental petitions result, under the rules of court, in findings, we agree with county counsel that the argument is better characterized as based on collateral estoppel. It is a matter of *issue* preclusion, not *claim* preclusion.

(1993) 5 Cal.4th 242 [19 Cal.Rptr.2d 698, 851 P.2d 1307], and *In re Nathaniel P.* (1989) 211 Cal.App.3d 660 [259 Cal.Rptr. 555]. The court concluded from those decisions that collateral estoppel effect should not be given at a termination-of-services hearing when the parents continue to deny that molestation ever happened and "new evidence" supports the denial. (*Blanca P., supra*, 45 Cal.App.4th at p. 1757.)

Here, the trial judge on the section 342 petition noted that he was presented with a kind of "*Blanca P.* in reverse." On appeal, however, Remberto's counsel attempts to distinguish *Blanca P.*, saying *Blanca P.* involved substantial new evidence that cast doubt on the original jurisdictional finding, while here, supposedly, there was "only a rehash of old evidence."

We disagree. New disclosures of child abuse, substantively different from previous disclosures, do constitute new evidence.

It is true that a set of allegations under subdivision (d) of section 300, which speaks only generically of sexual abuse, *had* been litigated with the original petition. And if Jessica's disclosures in the April 2000 interviews only reiterated those allegations, Remberto might have a point.

He doesn't, because one of the more horrible aspects of an adult's sexual abuse of a child is typically the inculcation by the adult within the child of a reluctance to report the abuse to others. (E.g., *People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1099 [215 Cal.Rptr. 45] [noting expert may testify that "as a class victims of molestation typically . . . are reluctant to disclose or discuss the sordid episodes"]; see also *In re Lucero L., supra*, 22 Cal.4th at p. 1235 [testimony of child abuse specialist that children recant reports of abuse to protect themselves and their families].[10] )

Because victims of child molestation may not make complete disclosures of the extent of abuse initially, it would be too broad an application of collateral estoppel to hold that further disclosures could not be the subject of some sort of jurisdictional hearing.[11] To do so would be to penalize children

---

[10]It appears, however, that the rule is not universal. Given the right circumstances, such as "relentless suggestions over long periods of time, coupled with repeated negative stereotype inductions and pleas to help the authorities by disclosing details of abuse," some children can become quite "gleeful" as they recount alleged sexual molestation. (Ceci et al., *Children's Allegations of Sexual Abuse: Forensic and Scientific Issues: A Reply to Commentators* (1995) 1 Psychol. Pub. Pol'y & L. 494, 506.)

[11]As one might gather from *Blanca P.*, substantive justice is best served in sexual abuse cases when the common law doctrine of collateral estoppel is applied narrowly. As we stated

who are too shy or reticent to disclose the full extent of their sexual abuse prior to the initial dependency petition. In effect, the damage done to the victim would be compounded by a wrong perpetrated by the molester—the invariable warning to the child not to tell.

Here, Jessica disclosed much more in her interview after the hearing on the original jurisdictional petition than she did before (e.g., the sexual intercourse, the pornographic exposures, the french kissing).[12] The new disclosures must necessarily, then, have constituted new "evidence" of different acts of abuse from those previously litigated.

## B.   *The Minors' Appeal*

### 1.   *The Trial Court Should Have Allowed the Petition to Be Amended According to Proof*

■ The minors have brought their own appeal, making two contentions. We begin with the one that is meritorious first, related as it is to our previous discussion regarding the role of pleadings in the juvenile dependency court.

As mentioned above, the subsequent 342 petition had alleged that Remberto had, on numerous occasions prior to August 18, 1999, penetrated his daughter's vagina with his penis. Some of Jessica's actual testimony, however, was to the effect that Remberto had touched her vagina with his penis rather than penetrated her vagina. County counsel proposed to amend the subsequent section 342 petition according to proof by substituting the word "touching" in the place of "penetrating," but the trial court denied the request, largely because of its decision to treat the subsequent section 342 petition as a section 388 modification petition.

there, "[t]he consequences of being wrong—*on either side*—are too great" when child molestation has been alleged. (*Blanca P. v. Superior Court, supra,* 45 Cal.App.4th at p. 1754, original italics.)

*Blanca P.* devoted considerable space to the original proceeding, where the assigned trial judge (not the one whose name appears in the reported decision) did not even realize until the hearing began that it was about *whether* the father had molested his daughter—the judge went into the hearing assuming that the father had already been found guilty of the sexual abuse of a child. (See *Blanca P. v. Superior Court, supra,* 45 Cal.App.4th at pp. 1744-1745.) The case illustrated certain unfortunate realities of California's juvenile dependency system, namely that there is a tremendous volume of dependency matters to be adjudicated. That volume increases the risk of erroneous factfinding because judges are not infallible. (See *Blanca P., supra,* 45 Cal.App.4th at pp. 1758-1759.) The system therefore cannot be so "rigid and inflexible [in] character" that erroneous determinations of abuse become irreversible. (See *In re Carmaleta B., supra,* 21 Cal.3d at pp. 493-494.) The broad application of collateral estoppel is thus not only unrealistic in the sexual abuse context, but downright harmful.

[12]And, as if to emphasize our point, at least one of her new revelations, namely that her father had asked her to take pictures of him naked, was believed by the trial judge.

Section 388 is structured in such a way that a court must first examine whether the alleged "change of circumstances or new evidence" would even merit a *hearing*. Much of the case law in the area centers around whether the trial court erred in not granting such a hearing at all. The trial judge noted this peculiarity of section 388, and concluded from it that he had no power to amend the petition according to the proof already received. Said the trial judge, "a 388 is based on what has been presented in the petition."

Regardless of whether the trial court was correct in proceeding under Welfare and Institutions Code section 388, or should have stayed the course under Welfare and Institutions Code section 342, it erred in not allowing amendment of the petition according to proof.[13] Both sections 342 and 388 provide for "petitions." Under section 348, the basic rules of amendment set forth in the Code of Civil Procedure at section 469 et seq. "apply to petitions and proceedings" under the juvenile court law. There is nothing in section 348 that exempts section 388 modification petitions from the basic rules of amendment as spelled out in the Code of Civil Procedure.

Given the haste with which petitions are sometimes drafted, and section 332's statement that only a "concise statement of facts is required," the ability to amend according to proof plays an important role in the overall dependency scheme. If a variance between pleading and proof—to use the traditional term of art from the civil law (see 5 Witkin, Cal. Procedure (4th ed. 1997) Pleadings, § 1141, pp. 596-597)—is so wide that it would, in

---

[13]While the matter is academic in this case (because all the parties waived any error in proceeding as a § 388 petition), we agree with county counsel that the trial judge should have treated the petition under section 342. If the court had done so, it would probably have allowed the county counsel to amend. (It was still error, however, not to allow an amendment even under § 388.)

The whole point of the section 342 petition was to establish that a new category, or "description" under section 300, applied, which is the purpose of section 342. Section 388 doesn't quite fit, because its use circumvents the requirement of specific true or false findings that apply to subsequent or supplemental petitions. (Compare Cal. Rules of Court, rule 1431 with rule 1432.)

*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872 [101 Cal.Rptr.2d 187], relied on by the minors' counsel for the proposition that the trial court correctly proceeded under section 388, is distinguishable. *Sheila S.* was a case where jurisdiction was established because of, among other things, sexual abuse (the facts in the case are actually quite tragic, illustrating the tendency of sexual abuse to be perpetrated from generation to generation), and the initial dispositional order provided for reunification services. Subsequent psychological evaluations showed that reunification services would be futile, and the county sought to rescind the provision of reunification services by means of section 388. That was okay, said the appellate court, because "any order" in section 388 means "any order." (See *Sheila S., supra*, 84 Cal.App.4th at p. 878.) The present case, unlike *Sheila S.*, involves what is in substance a jurisdictional adjudication, declaring a given category under section 300 to warrant the assumption of jurisdiction, not a specific order for the provision of services.

effect, violate due process to allow the amendment, the court should, of course, refuse any such amendment.[14]

The basic rule from civil law, however, is that amendments to conform to proof are favored, and should not be denied unless the pleading as drafted prior to the proposed amendment would have misled the adversarial party to its prejudice. (See *South Bay Building Enterprises, Inc. v. Riviera Lend-Lease, Inc.* (1999) 72 Cal.App.4th 1111, 1124 [85 Cal.Rptr.2d 647].) Here, it cannot be seriously maintained that Remberto would possibly have prepared his defense differently if the allegation had been that he had "touched" his daughter's vagina with his penis, as distinct from "penetrated." The basic allegation was there, and any variance between "touching" and "penetrating" could not have misled him to his detriment. Both allegations are heinous, and entail the intimate violation of a child.

On the other hand, the *refusal* to allow an amendment according to proof was prejudicial to the minors. The reason is this: It meant that the trial judge never considered the truth or falsity of whether Remberto had "touched," as distinct from "penetrated," Jessica's vagina.[15]

The ramifications of a finding on that issue, one way or the other, are significant for the future course of this dependency, as well as for any future dependencies involving Remberto. As things now stand, for example, there has been no finding of "severe sexual abuse," as defined in section 361.5, subdivision (b)(6) (severe sexual abuse includes "genital-genital . . . contact"), which can result in a total denial of reunification services. By not allowing the amendment, the trial court avoided consideration of a question that directly implicates future services.

Here, allegations of sexual abuse were grave: Remberto was alleged, by his daughter, to have done things that would, under section 361.5, utterly

---

[14]For example, suppose a petition only alleges, under subdivision (d) of section 300, a variety of specific sexual acts perpetrated by a parent, but the trial judge does not find these are true. The county then attempts to amend the petition to allege serious *emotional* damage under subdivision (c) of section 300, based on the idea that any child who would make such allegations, even if false, has obviously been subject to emotional abuse. Such a tactic would be nothing more than a cheap way to establish dependency without giving the parent adequate notice of dependency jurisdiction under an emotional abuse theory.

[15]Remberto has not argued that the trial court went beyond its authority in making specific findings of abuse pursuant to a section 388 modification proceeding, i.e., that the court was not required to make any findings at all. Nor could he, since he waived any defects in proceeding under section 388. Even so, as we have explained in footnote 13, the case would be far "cleaner" if the trial court treated the section 342 petition as what it was—a section 342 petition—and not recast it as a section 388 petition. Of course, the trial judge did not have the benefit of knowing, as we establish in this opinion, that Remberto's res judicata argument was not meritorious, and probably was proceeding under section 388 as a precautionary measure.

preclude reunification. There was evidence of such things at the hearing. Further, there was only minimal prejudice to Remberto if the amendment had been allowed, because the nature of the allegation (penetration) and of the proof (touching) were quite similar. We therefore must conclude that the decision not to allow the amendment according to proof was an abuse of discretion. The case must be remanded to allow allegation d-2 to be amended, and for the court to consider whether that allegation, as amended, is true.[16]

### 2. *The Trial Court Was Not Required to Find the Other Allegations of Abuse to Be True*

The minors' last point is essentially a sufficiency of evidence argument. They claim there was no rational basis for the trial court to conclude that the remaining allegations of sexual abuse were not true.

The issue is a tough one, because we agree with the minors and county counsel that substantial evidence would have supported finding the remaining allegations to be true. But credibility is governed by more than just the words transcribed by a court reporter. A trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so. (See *Blank v. Coffin* (1942) 20 Cal.2d 457, 461 [126 P.2d 868]; see also *Guerra v. Balestrieri* (1954) 127 Cal.App.2d 511, 515 [274 P.2d 443] ["the trier of the facts is not required to believe everything that a witness says even if uncontradicted"].)

We can think of two rational reasons why the trial judge was not required to believe everything that Jessica said. The first is the flip side of our point about progressive disclosures, and is general. The traumatic nature of some sexual abuse, in conjunction with multiple interviews by well-meaning adults, may prompt a child to exaggerate in a case like this. Only the trial judge as a trier of fact is in a position to separate the truth from the exaggeration, sometimes revealed by things like verbal hesitancy and body language which are not picked up in a reporter's transcript.

The second reason is specific to this case. The trial judge was familiar with a psychologist's report that not only refused to find that Remberto had probably molested his children, but which warned *against* counseling that was focused on the "alleged" (the psychologist's word) sexual abuse. Given

---

[16]From our vantage point now, we see no necessity to require Jessica to testify again, as long as the case goes back to the same trial judge. He has already heard the evidence, and can use the occasion of this limited remand simply to consider whether he would have found the allegation, as amended, to be true.

such equivocation from the examining psychologist, it follows that the trial judge could rationally treat Jessica's testimony with at least a little skepticism.

## IV. DISPOSITION

The order is affirmed to the extent that it finds the children came within subdivision (d) of section 300, and to the extent that it finds the substance of allegations d-1, d-4, d-6, and d-10 of the section 342 petition to be true. It is affirmed to the extent that it finds the substance of the allegations d-3, d-5, d-7, d-8, and d-9 not to be true.

The order is reversed to the extent that it finds allegation d-2 not to be true. The matter is remanded to the trial court to consider whether the substance of allegation d-2, as county counsel proposed to amend it, is true or false.

Bedsworth, J., and O'Leary, J., concurred.