Filed 5/28/14  In re Benjamin T. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re BENJAMIN T., a Person Coming Under the Juvenile Court Law. | B247428 (Los Angeles County Super. Ct. No. CK96907) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JEFFREY T., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sherri Sobel, Juvenile Court Referee.  Reversed and remanded.

John E. Carlson for Defendant and Appellant Jeffrey T. (Father).

M. Elizabeth Handy for Respondent Gina G. (Mother).

Karen B. Stalter, under appointment by the Court of Appeal, for Respondent Benjamin T. (Minor).

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kimberly Roura, Senior Associate County Counsel, for Plaintiff and Respondent.

Appellant Jeffrey T. (Father) and Gina G. (Mother) are the parents of Benjamin T. (born November 2000). Father and Mother are divorced and shared custody of Benjamin. On December 12, 2012, the Department of Children and Family Services (Department) filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] alleging that Father (1) was under the influence of alcohol while driving Benjamin in the car; (2) fired a gun in his home while Benjamin was present; and (3) abused alcohol and marijuana. An adjudication hearing was held on January 10th and 11th, 2013. After receiving the Department's reports into evidence and hearing testimony from several witnesses, including Benjamin, the court struck the counts alleged in the petition and amended the petition to add two new counts pursuant to section 300, subdivision (b) and sustained them, removing Benjamin from Father's custody with monitored visitation. Father appealed from the sustained amended jurisdictional allegations (this case, No. B247428).

Mother and Benjamin filed separate respondent's briefs. The Department filed a letter brief, conceding that the court's removal order and order sustaining the amended petition were improper.

While the matter was on appeal, a contested section 364 hearing was held on December 13, 2013. Mother, Father, and Benjamin testified. At that hearing, the court found "those conditions which would justify the initial assumption of jurisdiction . . . no longer exist." On December 20, 2013, it terminated jurisdiction and ordered that Mother have primary physical custody of Benjamin with Father to share joint legal custody. After a custody order was issued by the dependency court, Father moved to modify the terms of the order. The termination order was stayed. On February 3, 2014, a modification to the custody order was filed and jurisdiction was terminated.

Benjamin appealed the December 20, 2013 termination order on January 7, 2014 (assigned case No. B253800). We sent letters to Benjamin, Mother, Father and the

---

[1]     All further undesignated statutory references shall be to the Welfare and Institutions Code.

Department requesting letter briefs on the issue of whether the appeal in this case, No. B247428, should be dismissed as moot in light of these developments.

The Department responded, arguing this appeal was moot. Mother filed a letter indicating that she would not file anything further. Benjamin filed a letter brief belatedly, even after we granted an extension, contending the appeal was not moot. We granted leave to file and continued oral argument. Benjamin concurrently filed a "motion to take additional evidence on appeal."

We deny the motion to take additional evidence and reverse the order granting jurisdiction and remand with directions.

*FACTUAL & PROCEDURAL BACKGROUND*

The petition was filed after a referral in December 2012 which alleged that while Benjamin was staying with him, Father was intoxicated, argued with a friend and shot a gun inside and outside at home. Father refused the social worker's request to drug test. Father's friend Joe, who had known Father for 20 years, confirmed that Father "smokes marijuana and drinks beer and hard liquor" "morning, noon and night." Joe claimed Father had previously strangled a dog. Joe told the social worker that Father was drunk or high, and provoked Joe's dog, who then bit Father. Father got his gun and shot into the floor while Benjamin was present. Benjamin cried, and Father smashed his computer, calling Benjamin derogatory names. The police arrived. Father denied the allegations, but admitted he threw the computer across the room. Benjamin denied seeing the gun or hearing gunshots, but said he heard a loud sound. Father denied owning a gun and police did not search for one.

Both Joe and Benjamin told the social worker Father regularly calls Benjamin derogatory names. Benjamin said Father will not let him eat what he wants and he was afraid of being hurt by Father. Several people sent e-mails to the social worker, reporting that Father drank often, had a violent temper and used abusive language towards Benjamin. Benjamin's half-siblings, who lived with their mother in North Carolina, reported to their mother that Father often drank and was verbally and physically abusive to them and to Benjamin.

3

At the adjudication hearing, the court received the social workers' reports into evidence as well as reports from the police officers and three psychologists. Several witnesses testified that Father was a wonderful parent and had a great relationship with Benjamin. Mother was characterized by some witnesses as overprotective and Father accused her of coaching Benjamin due to a bitter custody dispute. There was evidence that Benjamin had been born premature and severely underweight, and that he had several food aversions. Several witnesses testified that Benjamin was losing weight and Mother submitted a copy of a chart showing that Benjamin was underweight for his height. Benjamin testified he was fearful Father would harm him. Benjamin, however, admitted he did not see Father holding a gun, only that Father got into an argument with Joe about a dog.

After the witnesses had concluded their testimony, the court indicated its tentative ruling would be to dismiss everything that had been alleged and to sustain two new counts: "(b)(1) that the parents are involved in a volatile, destructive family law case with the child in the middle and the (b)(2) having to do with the behavior of the father which has been seen by many people regarding how he speaks to his child." Father's counsel argued there was no threat of physical harm. The court asked about emotional harm and Father's counsel reiterated that it was not alleged in the count.

The court then sustained the following counts: (b)(1): "Mother and Father are involved in volatile and destructive family law case, with the child in the middle" and (b)(2): Father verbally abused Benjamin, "calling him derogatory names and causing [Benjamin] to fear for his physical safety." The court removed Benjamin from Father's custody and permitted him to remain in Mother's custody. The court ordered family maintenance services for Mother and Father and monitored visits for Father. The court stated, inter alia: "[ ]I believe that this child—I don't have anything for a (c) here. I need an expert. I don't have one. No one provided one. I don't have any therapist telling me anything. All I have are my eyes to look at the child. I think he's suicidal. I think he's depressed. I think he's scared to death. [¶] He was shrinking physically right before our

4

eyes in the last couple days, just shrinking. He couldn't even testify. He started crying right away. . . . He's 12. . . . [¶¶] This kid is in mortal fear of his father. . . ."

The court proceeded to comment on the lack of credibility of either Mother's or Father's claims.[2] It then made a finding that "by a preponderance of the evidence, this child is a child described under W&I code section 300(b). (B)(1) is stricken. (B)(2) is stricken. And (B)(3) is stricken. [¶] I don't have anything to prove to me that this man is a substance abuser, a marijuana abuser, or that he has driven in the car with his kid under the influence of anything. All I have is stuff from years and years and years ago and people on both sides who I just don't find credible at all. [¶] The (b)(1) is sustained. Mother and Father are involved in a volatile and destructive family law case with the child in the middle, which is detrimental to his health. And the father is verbally abusive to the child, calling him derogatory names and causing him to fear for his physical safety, which by the way he mentioned at least three or four times. [¶] The court declares this child a dependent pursuant to W&I Code section 300(b). "

After ordering therapy and classes, it said "I need wrap [around services] to also have a nutritionist as part of the team . . . we've got to figure out what the kid will eat. . . . I want an updated report from the Department indicating . . . how he's doing on his nutrition. [¶] Fatten him up a little, although mom's very skinny and dad's very skinny. He's never going to be a fat kid."

---

2      The court stated: "Did the mother do it? Did the mother's friends do it? . . . All these people are liars. Not only are they liars but the Police Department are liars. . . . That's what father says. He was profiled. They didn't like his clothes. They didn't like what he was eating. He was convicted. It was a mistake. The whole thing was a mistake. He had to do programs that he shouldn't have had to do. This is all the police's fault. Everybody's lying but the father. [¶] And, from the mother's perspective, he's the wors[t] thing that ever happened to this kid in his whole entire life. [¶] None of that is true. Dad needs to take responsibility for the fact that there is nothing but chaos in this man's life, and mom needs to take responsibility for the fact that this little boy needs a mother and father."

*CONTENTIONS ON APPEAL*

The Department contends that the order terminating jurisdiction renders this appeal moot, and also that the family law court is the appropriate venue for resolving custody or visitation issues in the future.

Father contends the appeal is not moot because there was an improper determination he was an offending parent and the findings of the dependency court have an adverse consequence on him in other proceedings and on his relationship with his son.

Benjamin contends the appeal is moot because Father failed to appeal the termination order and because of Father's conduct at subsequent dependency proceedings.

In his motion to take additional evidence on appeal, Benjamin submitted court documents demonstrating that Father, through counsel, participated in juvenile court proceedings and sought specific orders from the juvenile court,[3] and notices of appeal of the termination order  filed by Benjamin and Mother.  Benjamin contends that there was testimony elicited at the adjudication hearing which described the relationship between Mother and Father and its effect on Benjamin's emotional well-being.  Because Father did not object to this line of questioning, Benjamin contends that the allegations in the petition were simply amended to conform to proof.  Finally, Benjamin requests that in the event we determine the appeal is not moot, we sustain the amended count b-1 on the basis of Father's oral waiver.

---

[3]     Benjamin refers specifically to documents which show that in February 2013 Father sought a court order for the Department to investigate whether a section 387 petition should be filed, in March 2013 Father's counsel filed a document acknowledging that the juvenile court can select a monitor for counseling between Benjamin and Father, a motion filed by Father in September 2013 regarding Benjamin's school, that Father's counsel cross-examined Benjamin at a September 2013 contested hearing, that Father's counsel submitted a witness list for a December 2013 contested 364 hearing, and a request by Father's counsel in December 2013 that the court remove Benjamin from Mother's custody and for visitation.

*DISCUSSION*

1. *Mootness*

Generally, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot, but each case must be decided on an individual basis. (*In re Michelle M.* (1992) 8 Cal.App.4th 326, 330; *In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404.)

An issue is not moot if the purported error infects the outcome of subsequent proceedings. (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054-1055.)

A dismissal operates as an affirmance of the underlying judgment and orders. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 413.) "The fact that the dependency action has been dismissed should not preclude review of a significant basis for the assertion of jurisdiction where exercise of that jurisdiction has resulted in orders which continue to adversely affect appellant." (*In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548.) In this case, the juvenile court terminated jurisdiction and restored Father's right to monitored visitation. Because the orders adversely affect Father and may have an influence on future custody decisions, we will not dismiss the case as moot and will consider the case on its merits.

2. *Waiver*

Mother and Benjamin contend that Father has waived his challenge to the (b)(1) count because he agreed to it during the hearing. The record reveals that the following colloquy occurred after the court announced its tentative decision to sustain two new counts: "[The Court]: . . . I can't imagine that you have a problem with the (b)(1). . . . [¶] [Father's counsel]: No."

The court then asked if Father wanted to argue the (b)(2) count and Father proceeded to argue there was no evidence of physical harm.

A challenge to the sufficiency of the evidence to support a factual finding is an "obvious" exception to the appellate rule of forfeiture by failing to object in the trial court. (*People v. Butler* (2003) 31 Cal.4th 1119, 1126.) A fair interpretation was that Father did not want to contest the allegation that the divorce was bitter and contentious.

7

But since he proceeded to argue there was no physical harm to Benjamin, it could be concluded that he did not feel there was any physical harm as to the (b)(1) count either. In any event, we proceed to discuss the merits of his challenge to the (b)(1) count.

*3. Due process*

Father challenges the juvenile court's authority to amend and sustain the amended section 300, subdivision (b) counts.

The counts alleged in the petition revolved around Father's alleged use of a gun in the presence of Benjamin, driving Benjamin while under the influence of alcohol and smoking marijuana in the presence of Benjamin, subjecting him to physical abuse. What the juvenile court ultimately found was that Mother and Father's marital disputes and Father's name-calling subjected him to emotional and physical abuse.

While under certain circumstances, the allegations in a dependency petition may be conformed to proof (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1040-1043), this is not proper when there is no connection between the allegations as pled and the allegations which are ultimately sustained. (*In re David H.* (2008) 165 Cal.App.4th 1626, 1640 [amendment should not be allowed if the variance between the petition and the proof offered at the jurisdictional hearing is so great that the parent is denied constitutionally adequate notice of the allegations].)

"Due process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188.) Notice at the hearing is insufficient; the parent is entitled to notice of the specific charge or factual allegations to be considered at the hearing sufficiently in advance to permit him to prepare a defense. (*In re Gault* (1967) 387 U.S.1, 33; *In re Wilford J.* (2005) 131 Cal.App.4th, 742, 746.)

Section 300, subdivision (b) provides that a child may be adjudged a dependent of the juvenile court if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." Subdivision (c) of

8

section 300 provides for jurisdiction if "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian. . . ."

Before the dependency court can exert jurisdiction under section 300, subdivision (b), there must be evidence that the child is exposed to "a substantial risk of serious physical harm or illness." It does not provide for jurisdiction based on emotional harm. (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717-718.)

The parental conduct branch of subdivision (c), not subdivision (b), seeks to protect against abusive behavior that results in severe emotional damage. (*In re Alexander K.* (1993) 14 Cal.App.4th 549, 557.)

Although the behavior of Father towards Benjamin was discussed in the reports submitted by the Department and in the testimony of witnesses, Father had no notice that evidence should be presented as to the physical harm to Benjamin occasioned by Father's treatment. The allegations of physical harm all stemmed from the alleged gun use and substance abuse, not Father's verbal abuse or the circumstances surrounding the custody battle.

The court felt it had no evidence of emotional harm to Benjamin and based its findings on his physical appearance. The court noted that Benjamin appeared to be decreasing in size during the proceedings and seemed underweight. It specifically noted in its comments that Benjamin was "shrinking before our eyes." It requested assignment of a nutritionist to the case. It specifically reaffirmed its findings of physical harm when questioned by counsel.

Because Father was not given sufficient notice of the amended counts he could not have defended himself on the allegations that his behavior caused physical harm to Benjamin. Moreover, there was no evidence that Benjamin's weight loss was due to either Father's verbal abuse or the marital disputes.

We find the violation of Father's due process rights was not harmless beyond a reasonable doubt. Although Mother did not appeal, the violation of due process so infected the jurisdiction proceedings that the matter must be remanded.

*4. Subsequent Proceedings*

After this appeal was filed, the dependency court issued an order terminating jurisdiction on December 20, 2013, and a juvenile custody order was issued by the dependency court. After Father filed a request to modify the custody order, the termination order was stayed. The custody order was modified and an order terminating jurisdiction was issued again on February 13, 2014. The custody order granted Mother physical custody with Father to have visitation. Father and Mother were awarded joint legal custody.

The notice of appeal in case No. B253800 filed by Benjamin is from the December 13 and December 20, 2013 orders. Mother's appeal is from the December 13 and February 3, 2014 orders.

*5. Conclusion*

The jurisdictional findings under section 300, subdivision (b) must be reversed, and the disposition order removing Benjamin from Father's care and custody vacated. We remand the matter to the dependency court for a new jurisdictional hearing. In addition, the subsequent order terminating jurisdiction must also be vacated.

The juvenile court shall conduct a new dispositional/termination hearing. The court may consider whatever supplemental information is appropriate or has developed since the last jurisdictional hearing. If necessary, the court may reconsider the custody arrangements which are currently in place.

*DISPOSITION*

Benjamin's motion to take additional evidence is denied. The jurisdictional findings and disposition order are reversed and the matter remanded to the juvenile court for further proceedings not inconsistent with this opinion.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                    **ZELON, J.**

11