Filed 6/3/22  In re B.C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re B.C., a Person Coming Under the Juvenile Court Law. | D079909 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4210B) |
| v. | |
| C.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Niti Gupta, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Tahra Broderson, Deputy County Counsel, for Plaintiff and Respondent.

C.C. (Mother) appeals from the juvenile court's order denying her Welfare and Institutions Code[1] section 388 petition requesting family maintenance services and return of her daughter, B.C.  On appeal, Mother abandons her request for B.C.'s return and argues that the juvenile court erred when it denied her request for an additional six months of services. Mother claims that she established changed circumstances and showed that reunification was in B.C.'s best interests.  We conclude that the juvenile court acted within its discretion in denying the section 388 modification petition and affirm the order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Mother's History*

At age 25, Mother began drinking alcohol and using marijuana.  She then progressed to daily methamphetamine use, which continued for eight years.  In October 2017, Mother gave birth to a boy, P.C.  Mother and child both tested positive for amphetamine and marijuana.  The San Diego County Health and Human Services Agency (the Agency) removed P.C. from Mother, who did not participate in treatment or maintain contact with the Agency. After three drug arrests in 2018, Mother received a three-year prison term for assault with a deadly weapon.  She was paroled in October 2019.  Mother attended a recovery substance abuse program as part of her parole, tested negative for illegal substances in November and December 2019 but left the program and later relapsed on methamphetamine.  After the juvenile court terminated Mother's parental rights to P.C., the maternal grandmother adopted him in February 2020.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

In July 2020, Mother gave birth prematurely to B.C. in her home and was transported to a hospital via ambulance. B.C.'s urine and umbilical cord tested positive for methamphetamine, amphetamine, and marijuana. Mother admitted drug use while pregnant. She also stated that she had previously been diagnosed as suffering from paranoid schizophrenia, bipolar disorder, and anxiety disorder, which had resulted in several hospitalizations and holds in the behavioral health unit. Mother admitted that her mental health issues often made her angry or scared, causing her to become aggressive and violent toward others. Although Mother claimed that she was receiving mental health treatment and taking medication, she did not provide the social worker with contact information for her mental health care providers and the social worker could not verify that Mother was receiving mental health treatment or taking medication.

B. *The Current Proceeding*

In August 2020, the Agency filed a petition on B.C.'s behalf alleging that Mother admitted drug use while pregnant and had her parental rights to another child terminated due to her drug use. At the detention hearing later that month, the juvenile court ordered voluntary services for Mother, granted supervised visitation, and informed Mother that she had six months to make substantive progress in any court-ordered treatment programs and that her failure to do so may result in the termination of her parental rights.[2]

Although Mother participated in a daily outpatient substance abuse treatment program and had been doing well, in early September 2020, she tested positive for methamphetamine, amphetamine, and marijuana. In October 2020, Mother moved into a sober living facility but she missed her

---

[2] The social worker located the alleged father, Jacob C., in custody. A paternity test later confirmed that Jacob is B.C.'s biological father. Jacob has not challenged the termination of his parental rights.

drug tests and group meetings, and did not return the social worker's telephone calls. At the contested jurisdiction hearing later that month, the juvenile court found the allegation true, and adjudged B.C. a dependent under section 300, subdivision (b).

In early November 2020, the social worker learned from Mother's case manager that Mother had stopped attending group meetings at the sober living facility and that she would be discharged from the program if she did not contact the case manager. Mother's parole officer also told the social worker that she was unable to locate Mother, who did not respond to her phone calls, and that a warrant would be issued for Mother's arrest. At the disposition hearing later that month, the juvenile court removed custody from Mother. The court ordered reunification services and monitored visits for Mother, who was not present at the hearing. Between November 2020 and April 2021, Mother participated in no services and did not attempt to visit B.C. Neither the Agency nor her parole officer was able to locate her.

In late April 2021, the Agency located Mother at the Las Colinas Detention Facility and learned that she had been arrested for assault with a deadly weapon and felony parole violation. On April 30, 2021, the Agency placed B.C. with the paternal grandmother. At the contested six-month review hearing in June 2021, the juvenile court terminated Mother's reunification services and set a section 366.26 hearing to select a permanent plan for B.C.

In late July 2021, approximately one month after her services were terminated, Mother enrolled in a residential substance abuse program at the Family Recovery Center (FRC). In early September 2021, Mother had her first in-person visit with eleven-month-old B.C., who cried when Mother attempted to engage with her. Mother consistently visited B.C. and, in

4

October 2021, Mother's visitation was increased from one hour to two hours per week. In November 2021, Mother graduated from the FRC.

In early January 2022, Mother filed a section 388 modification petition asking the juvenile court to change the court order regarding B.C.'s placement. Mother requested that the court order family maintenance services and place B.C. in her care.[3] Mother was residing in a sober living facility. At the combined section 388 and 366.26 hearings, the juvenile court heard testimony from the social worker and Mother. After closing argument, the juvenile court found that Mother had "demonstrated changing circumstances," not changed circumstances. The court noted that Mother had four months of sobriety based on her testimony but no "documented proof of that." Even assuming that Mother had proven changed circumstances, the juvenile court concluded that Mother failed to meet her burden to show that granting the petition would be in B.C.'s best interests. The court thus denied the section 388 modification petition.

## II.
## DISCUSSION

A. *Legal Principles*

"Section 388 provides an ' "escape mechanism" ' for parents facing termination of their parental rights by allowing the juvenile court to consider a legitimate change in the parent's circumstances after reunification services have been terminated. [Citation.] This procedural mechanism, viewed in the context of the dependency scheme as a whole, provides the parent due process while accommodating the child's right to stability and permanency.

---

[3]     At the hearing on the petition, during opening statements Mother's counsel sought "additional reunification services and family maintenance services as the court sees fit." During closing argument, Mother's counsel changed the request and argued for reinstatement of reunification services.

[Citation.] After reunification services have been terminated, it is presumed that continued out-of-home care is in the child's best interests. [Citation.] Section 388 allows a parent to rebut that presumption by demonstrating changed circumstances that would warrant modification of a prior court order." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) The petitioner bears the burden of showing: (1) there has been a change of circumstance or new evidence; and (2) the modification of the order is in the child's best interests. (§ 388, subds. (a)(1) & (d).) Accordingly, the petitioner "must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)

It is not enough for a parent to show changing circumstances. (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) Rather, the parent must show changed circumstances of a significant nature. (*Ibid.*) "In the context of a substance abuse problem that has repeatedly resisted treatment in the past, a showing of materially changed circumstances requires more than a relatively brief period of sobriety or participation in yet another program." (*In re N.F.* (2021) 68 Cal.App.5th 112, 121.)

In ruling on a section 388 modification petition, the juvenile court may consider the entire factual and procedural history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) We review a juvenile court's denial of a section 388 petition for an abuse of discretion and its factual findings for substantial evidence. (*In re J.M.* (2020) 50 Cal.App.5th 833, 846.) We cannot reassess the credibility of witnesses and must draw "all inferences from the evidence which support the court's determination." (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1177.)

B. *The Juvenile Court Did Not Abuse Its Discretion in Denying Mother's Section 388 Petition*

Mother contends that she "indisputably" demonstrated a substantial change of circumstances through her completion of a residential substance abuse program, consistent weekly negative drug tests, participation in aftercare, ongoing consistent attendance at weekly NA meetings, sustained sobriety, and her regular, committed, and positive weekly visitation with B.C.

We agree that Mother demonstrated some progress toward ameliorating her substance abuse problem when, approximately one month after the juvenile court terminated her reunification services, she voluntarily entered a residential substance abuse treatment program on July 22, 2021. Mother successfully completed the program on November 18, 2021. While in the program, Mother had her first in-person visit with eleven-month-old B.C. in early September 2021. However, she subsequently missed three consecutive weeks of visitation without explanation to the caregiver or the Agency.

Mother claimed that she tried to call the social worker to set up visitation but "was dialing the wrong number." The social worker testified, however, that her telephone number had been the same throughout the entire case. Moreover, there is nothing in the record that suggests that Mother attempted to contact the caregiver or her attorney to obtain the social worker's number. Given Mother's dubious explanation for the missed visitation, the juvenile court could have reasonably concluded, based on other evidence, that Mother missed visits for that three-week period because she was again using drugs. (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043 ["A trier of fact is free to disbelieve a witness, even one uncontradicted, if there is any rational ground for doing so."].)

Mother testified that after graduating from FRC the week of November 23, she attended AA and NA meetings five times a week. However, Mother

7

could not verify this claim.  The social worker stated that Mother never provided her with any sign-in sheets.  Although Mother attached a sign-in sheet to her section 388 petition, it showed only that she had attended three AA meetings on consecutive days shortly *after* she filed her section 388 petition.  Mother provided no evidence to support her claim of attending weekly NA meetings.  Mother testified that she had another sign-in sheet and a letter from drug court at her sober living facility.  As minor's counsel noted during closing argument, the section 366.26 hearing was originally set in October 2021 for November 2021.  On the November hearing date, Mother indicated that she would be filing a section 388 petition and the section 366.26 hearing was continued to January 13, 2022.  Thus, Mother and her trial counsel had ample time to gather evidence to support Mother's claim that she attended meetings five times a week.

Mother tested negative for drugs while at FRC and testified that she submitted to random weekly drug tests at her sober living facility. However, the social worker received no information that Mother had been testing at the sober living facility. Mother provided no drug test results after leaving FRC in November 2021. Additionally, although Mother claimed that she was participating in drug court, she never provided the social worker with any documentation to substantiate this assertion. Without any verification of Mother's claims, we cannot assume that Mother maintained her sobriety from the time she left FRC in November 2021 to the date of the section 388 hearing on January 13, 2022. (See e.g., *In re Anthony W.* (2001) 87 Cal.App.4th 246, 251 [finding "conclusory" allegations of participation in and completion of drug counseling, testing, and parenting classes that were made without dates, names of counselors, certificates, or drug test results].)

We must also evaluate Mother's claim of changed circumstances in conjunction with her long history of substance abuse. She admitted eight years of daily methamphetamine use and her first child tested positive for amphetamine and marijuana at birth. Approximately 27 months later, she gave birth to B.C. who tested positive for methamphetamine, amphetamine and marijuana. Other than the approximately four months Mother spent in the highly structured setting of a residential drug treatment program, she presented no proof to support her claim of continued sobriety. Courts frequently affirm the denial of section 388 petitions based on short periods of sobriety (less than a year) when a child has been removed at a very young age. (See e.g., *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [parents' most recent efforts at sobriety "were only three months old" and did not demonstrate changed circumstances].) Additionally, Mother's history of mental illness is concerning. She testified that she saw a therapist every six

weeks and was taking her prescribed medication but provided no documentation to support these claims.

While we commend Mother for taking the initiative to enroll in FRC and for her progress to date, as the juvenile court found, that progress indicates only that her circumstances were at best changing, not changed. Given that B.C. was in a stable and loving environment with a caregiver who wanted to adopt her, it was in B.C.'s best interests not to upset that arrangement in the absence of changed circumstances.

Even if Mother had shown changed circumstances, she did not meet her burden to show that it would be in B.C.'s best interests to have B.C.'s permanent plans delayed by offering additional services.[4]  Where, as here, the juvenile court has terminated services, the best interests analysis is focused on the child's need for permanency and stability.  (*In re J.C.*, *supra*, 226 Cal.App.4th at p. 527.)  The child's best interests "are not to further delay permanency and stability in favor of rewarding" the parent for his or her "hard work and efforts to reunify."  (*Ibid.*)  B.C.'s caregiver wanted to provide her with stability and permanency through adoption.  B.C. has never been under Mother's care and at the time of the section 388 hearing, Mother's visits with B.C. were still supervised.  The social worker noted that the caregiver "continues to be the primary person who provides hygiene items,

<hr />

[4]     A parent who participates regularly in services and makes substantive progress may receive up to 18 months of reunification services but only if there is a substantial probability the child will be returned to the parent by the 18-month date.  (§ 361.5, subd. (a)(3)(A).)  Here, the 18-month date in B.C.'s case was approximately February 27, 2022; just 45 days after the contested hearing.  The record does not support a finding that B.C. could be returned to Mother's care within that timeframe, nor has Mother shown exceptional circumstances permitting services to the 24-month date.  (See §§ 361.5, subd. (a)(4)(A), 366.22, subd. (b); *Georgeanne G. v. Superior Court of Los Angeles County* (2020) 53 Cal.App.5th 856, 864, fn. 9.)

toys, and food" during visits and "a common theme since early in the visitation" is that Mother required prompting to change B.C.'s diaper. The social worker reported that B.C. sought out her caregiver during visits with Mother "and needs to have her caregiver close to allow the mother closeness." At the end of visits, B.C. would again seek out her caregiver and showed no signs of distress when parting from Mother. The social worker assessed the interactions between B.C. and Mother "as that of a child with a friendly adult."

Based on the evidence presented, the juvenile court could reasonably find that granting Mother's section 388 petition would delay stability and permanency for B.C., and would not be in her best interests, considering the stability that a permanent home would provide. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.) Accordingly, we conclude that the juvenile court acted well within its discretion in denying Mother's section 388 modification petition.

## DISPOSITION

The order denying C.C.'s section 388 modification petition is affirmed.

AARON, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

11