Filed 5/31/24  In re Salvador M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re SALVADOR M., a Person Coming Under the Juvenile Court Law. _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROSA H.,<br><br>    Defendant and Appellant. | B331349<br><br>(Los Angeles County Super. Ct. No. 22CCJP01131) |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore.  Affirmed.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

After receiving reports in February 2022 that Rosa H. (Mother) was in the midst of a mental health crisis, the Los Angeles County Department of Children and Family Services (DCFS) filed a Welfare and Institutions Code section 300 petition on behalf of her two children: Salvador, a seven-year-old with special needs, and Eduardo, Salvador's 16-year-old half brother.[1]

Mother made progress in managing her mental health for several months after DCFS filed the petition, and the juvenile court eventually terminated jurisdiction over Eduardo. The court also permitted Mother to resume shared physical custody of Salvador, who remained subject to dependency jurisdiction and who had been placed with his father, Jose M. (Father).

In April 2023, however, Mother suffered a serious setback in managing her mental health. She missed an appointment for injectable psychotropic medication and was hospitalized with abdominal pain. The hospital reported that Mother had tested positive for fentanyl and methamphetamine, although hospital staff refused to release a copy of the allegedly positive test results.

Following the hospital's report of the positive drug test, DCFS filed a section 342 subsequent petition on behalf of Salvador, alleging that Mother's substance abuse placed him at serious risk of harm. DCFS also filed a new section 300 petition on behalf of Eduardo, based on Mother's alleged substance abuse, as well as her failure to manage her mental health adequately.

Prior to the adjudication hearing on the newly filed petitions, DCFS discovered that Mother had allowed the motel room where she resided to become so unsanitary that it was uninhabitable. DCFS informed the juvenile court of this fact, and of its view that

_____

[1] Subsequent statutory references are to the Welfare and Institutions Code.

the room's condition was further evidence that Mother's mental health remained unmanaged.

At the adjudication hearing on the new petitions, the juvenile court dismissed the substance abuse allegations. The court, however, amended each petition during the hearing to conform to DCFS's evidence concerning Mother's unsanitary motel room and then sustained both petitions. At the disposition hearing two weeks later, the court granted Father sole legal and physical custody over Salvador and terminated dependency jurisdiction.

Mother now asks us to reverse the juvenile court's order sustaining the section 342 petition concerning Salvador, arguing the court violated her due process right to adequate notice when it amended and then sustained the petition during the adjudication hearing. She requests further that we reverse the exit order granting Father sole custody of Salvador, limiting Mother to monitored visits, and terminating jurisdiction.

We conclude, however, that Mother's challenge to the section 342 petition is moot because she has failed to appeal the juvenile court's exercise of jurisdiction over Salvador pursuant to the original section 300 petition filed in this case. In addition, we are not persuaded the court abused its discretion in issuing the exit order Mother challenges. We therefore affirm.

### FACTUAL AND PROCEDURAL SUMMARY[2]

In late February 2022, a caller informed DCFS that Mother had been behaving erratically at Salvador's school, "asking the teachers for help," but failing to identify "what kind of help she needed." (Boldface omitted.) In addition, when the caller

---

[2] We limit our summary to the facts and procedural history relevant to the issues Mother raises on appeal.

telephoned Mother to discuss Salvador's frequent absences from school, Mother stated that a cockroach infestation in the family's apartment had caused the absences, asked the caller to pray for her, and told the caller to stop contacting her.

A DCFS social worker visited the apartment where Mother lived with Father, Eduardo, and Salvador to investigate the caller's reports. The social worker found Mother, Eduardo, and Salvador at home and attempted to interview each of them. Mother, however, "drift[ed] off" and "rambl[ed]" during her conversation with the social worker, stating that she had been diagnosed with bipolar disorder, gallstones, and "probably cancer." (Boldface omitted.) In addition, the social worker noticed that Mother was wearing two wristbands reflecting her recent admission to the hospital.

When the social worker asked Mother whether she was taking any medications, Mother asked Eduardo to help her locate her prescriptions. Eduardo appeared confused and stated he was unsure whether Mother had been taking her medications. Eduardo shared with the social worker that Mother suffers from periods of mental instability every two months, and that he had been staying home from school to care for Mother.

The social worker also met privately with Salvador. She observed that he "had dirty black feet and black dirty fingernails." Salvador told the social worker "he [had] not attended school due to being sick with an infectious illness," and that he did not want to return to school. Because Mother appeared "unstable," the social worker called Father home from work to provide immediate care for the children. (Boldface omitted.)

Father explained that Mother's mental health "[had] been spiraling out of control" following several deaths in her family, and that she had been hospitalized for mental health concerns at least six times. (Boldface omitted.) Father also shared that "it

4

[was] difficult for him to be involved" in managing Mother's mental health because "she [got] aggressive with him when he trie[d] to inquire about her mental health services." He noted that he had missed work frequently in order to care for Mother, and he expressed concern about leaving Salvador in Mother's care.

The social worker also interviewed the manager of the apartment building where the family then resided. The manager stated that Mother "scare[d] the neighbors and children" in the complex, and that she had threatened to burn down the building. (Boldface omitted.) The manager stated further that the family was behind on rent, and she did not intend to renew their lease.

In mid-March 2022, Father reported to the social worker that he and Salvador were moving to the paternal grandmother's home due to Mother's continued instability. Eduardo, however, refused to leave Mother and continued to reside with her.

DCFS subsequently obtained a warrant to remove Salvador and Eduardo from Mother's care and then filed a section 300 petition alleging that Mother's "mental and emotional problems" placed the children at serious risk of harm. The petition alleged further that Father had failed to protect the children from Mother.

At the May 12, 2022 adjudication hearing, the juvenile court sustained against both parents the following amended version of the allegations in the section 300 petition:

"[Mother] has mental health disorders, including bipolar disorder, visual hallucinations, disorganized thought process, and assaultive behavior, which when untreated, limit [her] ability to provide regular care and supervision of the children. Mother was involuntarily hospitalized on [February 24, 2022] and on prior occasions for these behaviors as [she] had failed to adhere to her psychotropic medication plan. . . . [Father] failed to take timely measures to protect his child when [M]other's mental health

symptoms reached crisis levels.  Such mental health disorders on the part of . . . [M]other and the failure to protect by . . . [F]ather endanger the children's physical and mental health and place them at risk of serious harm."

In addition, the court ordered a case plan for Mother requiring her to attend parenting classes, participate in mental health and psychological counseling, and take all prescribed psychotropic medications.  The case plan also granted Mother monitored visits with Salvador, who remained in Father's care.  The court declined to order any case plan for Father.

Leading up to the June 14, 2022 disposition hearing, DCFS reported Mother had made progress in managing her mental health, including by regularly taking her prescribed medications.  The court therefore granted Mother's request for a "home of parents" order permitting her to share custody of Salvador with Father.  The court also granted Mother's request to keep Eduardo in her care.  The court, however, retained jurisdiction over both children to permit continued monitoring of Mother's mental health.

For the next nine months, Mother continued to make progress with her case plan.  Salvador began spending weekends with Mother, and DCFS reported that Mother was "caring and attentive" during the visits.  And although she missed several therapy sessions, Mother was "cooperative with DCFS" and "in compliance with her psychiatric appointments."  Mother appeared to maintain this progress even after she was evicted from her apartment in February 2023.  At the March 13, 2023 status review hearing, the court therefore terminated jurisdiction as to Eduardo and closed his case.  But the court kept Salvador's case open and ordered Father to serve as "the primary custodial parent" in light of Mother's housing instability.

In late April 2023, Mother appeared to suffer a serious setback in meeting her case plan goals. She was hospitalized after she called 911 complaining of abdominal pain. The hospital performed a toxicology screening and reported to DCFS that Mother had tested positive for fentanyl and methamphetamine; however, the hospital refused to provide a copy of the positive test results to DCFS absent a subpoena. Mother did not dispute the positive test results, but denied that she had voluntarily consumed any drugs. She hypothesized that drugs may have been present in a cup of soda she accepted from a neighbor at the motel where she and Eduardo then were residing. Mother later tested negative for all substances.

Based on renewed concerns over Mother's housing and the hospital's report of Mother's positive drug screening, DCFS sought and obtained authorization to remove Salvador and Eduardo from Mother a second time. DCFS then filed a section 342 petition alleging that Mother's abuse of fentanyl and methamphetamine placed Salvador at substantial risk of serious physical harm. DCFS also filed a new section 300 petition seeking to reinstate dependency jurisdiction over Eduardo, alleging that Mother's substance abuse and unmanaged mental health problems rendered her incapable of caring for him. Neither petition made any reference to concerns over the condition of Mother's motel room.

On May 24, 2023, DCFS interviewed Mother concerning the allegations in the newly filed sections 342 and 300 petitions, in preparation for the scheduled June 1 adjudication hearing. During the interview, the social worker "observed [M]other's [motel] room to be disarrayed. The room appeared unkempt. The room had a foul odor, as it seem[ed] that the dog in the room [was] urinating in the room including the bed. The bathroom was untidy." DCFS included these observations in the May 31, 2023 report it filed with

the court. The report noted further that the condition of Mother's motel room was a "safety concern," and that "Mother's inability to care for herself brings uncertainties regarding [her] ability to fulfill her parental responsibilities, as 8-year-old . . . Salvador . . . requires constant care and supervision due to his mild intellectual delay."

The assigned DCFS social worker visited Mother at her motel room again on June 1, 2023. The social worker reported that she observed "smeared feces and visible urine" from the family's pet dog in the room, including in "the only bed in the room," and that the room "emitted an unbearable foul odor." Based on the social worker's observations, DCFS noted in its June 5, 2023 Last Minute Information for the juvenile court that "[M]other's severe mental health disorder continues to be a concern, as evidenced by the unsanitary and uninhabitable condition of [her] room."

On June 5, 2023, the court adjudicated the new section 300 petition concerning Eduardo and the section 342 petition concerning Salvador. Due in part to DCFS's inability to obtain a copy of Mother's drug screening results from her hospital stay, the court dismissed the count in the section 300 petition concerning Mother's alleged substance abuse. The court, however, expressed serious concern about Mother's mental health, given the state of her motel room:

"I am disturbed by this report. The Mother appears to have decompensated. And so we are here for adjudication. [¶] . . . It is evident that . . . Mother has decompensated. This is evidence of either [a] severe mental health disorder and/or drug abuse. But this is no way to raise children."

The court then stated its tentative intention to (1) amend the allegations in each petition to conform to DCFS's proof concerning the uninhabitable condition of Mother's motel room, and (2) sustain the petitions on that basis.

8

Mother objected to the court's tentative ruling, arguing that "[h]aving her children out of her care [had] caused her some stress and uneasiness," that she subsequently had cleaned the motel room, and that she otherwise was in full compliance with her mental health treatment program. Mother noted further that neither petition "plead[ed] any type of dirty home situation."

The court found Mother's arguments unpersuasive, however, explaining:

"[T]he history of this case is based upon mental health issues. It is not like someone is being surprised and they are now accused of some sexual misconduct or physical injury. It is no surprise that Mother has a long history of mental health, psychiatric disorder which evidently has ended up in her being hospitalized recently. Whether it was—she inadvertently had drugs. But the condition of the home certainly suggests that her condition, psychiatric disorder needs attention."

The court therefore amended both petitions to reflect the evidence regarding the condition of Mother's hotel room and sustained the petitions, as follows:

"[M]other . . . has a history of mental health disorders, including bipolar disorder, visual hallucinations, disorganized thought process, and assaultive behavior which when untreated, limit [her] ability to provide regular care and supervision of the child. On [June 1, 2023], [M]other's home was found to be in a filthy, unsanitary, and uninhabitable condition with a foul odor from animal feces permeating throughout the premises. The only bed in her abode contained urine and feces from the family's dog. Such condition of the home indicates that [M]other's mental health condition has deteriorated which places her children at risk of serious harm."

9

The court then stated it was prepared to grant Father sole custody of Salvador and to close Salvador's case at the conclusion of the hearing. In response, DCFS requested that the court permit it to assess Salvador's attachment to Mother and Eduardo prior to entering a final custody order: "[Counsel for DCFS]: There seems to be some issue that Salvador is attached to his brother and to his mom. And so I think it behooves us to explore that before we ask that [DCFS] opine about closing it out." The court agreed to continue the disposition hearing in Salvador's case to June 22, 2023.

On June 8, 2023, DCFS filed a status review report in preparation for the scheduled June 22 disposition hearing. The report stated, in relevant part, that Mother was "in minimal compliance with her attendance in psychiatric/psychotropic medication." Although she had appeared for her scheduled May 2023 psychotropic medication injection, she had missed appointments in March and April 2023. Mother also still had failed to secure permanent housing. With respect to Salvador's bond with Mother and Eduardo, the report noted that "[d]uring visits . . . , [the assigned social worker] observed [M]other to be caring and attentive towards Salvador." The report noted further that Salvador " 'like[s] visits with [his] mom,' " and " 'play[s] with [his] brother Eduardo.' " Finally, the report stated that Father "continue[d] to provide for Salvador and ensure[ ] that all his needs are met, such as medical, dental, educational, and emotional needs."

DCFS also filed a Last Minute Information for the court the day before the June 22, 2023 disposition hearing. The filing noted that the assigned social worker visited Mother and Eduardo's motel room on June 14, and that "the room appeared more organized," although the bedding and refrigerator still appeared dirty. The

10

filing noted further that Mother had received an injection of psychotropic medication on June 15, 2023.

At the June 22, 2023 disposition hearing, Mother requested joint legal and physical custody of Salvador. She argued that Father had failed to follow prior visitation schedules and expressed concern that she would not see Salvador if she and Father did not share custody. She urged the court to retain jurisdiction over Salvador so that it could monitor visitation issues. DCFS countered that Salvador was doing well in Father's care and recommended that the court award Father sole legal and physical custody. It argued further that issues involving compliance with visitation schedules "could happen in any capacity whether we are in dependency court or not. So just to monitor a family law situation is not really necessary for us. The dependency issue has been closed out. The father has taken good care of Salvador."

The juvenile court adopted DCFS's recommendation, granting Father sole legal and physical custody of Salvador and limiting Mother to monitored visits. It then terminated dependency jurisdiction over Salvador.

Mother timely appealed.

## DISCUSSION

### A. *Mother's Challenge to the Section 342 Subsequent Petition Is Moot*

First, Mother contends the juvenile court violated her due process rights when, without prior notice, it amended the section 342 petition during the June 5, 2023 adjudication hearing to conform to DCFS's "dirty home" evidence and then sustained the petition during that same hearing. She urges that we therefore must reverse the court's exercise of jurisdiction over Salvador and vacate the subsequent exit order. We conclude, however, that

11

Mother's challenge to the section 342 petition is moot because she raises no challenge to the section 300 petition pursuant to which the juvenile court originally exercised jurisdiction over Salvador.

"Critical distinctions exist between the various petitions filed in the juvenile court.  A section 300 'original' petition is filed by the agency to commence a proceeding to adjudge a child a dependent of the court.  [Citations.]  A section 342 'subsequent' petition is filed by the agency to allege new facts or circumstances about a current child that constitute *an additional ground* to adjudge the child a dependent." (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1075, italics added.)

The court thus acquired jurisdiction over Salvador when it sustained the allegations in the original section 300 petition, and its order sustaining the section 342 petition merely expanded the scope of its already existing jurisdiction.  (See *In re A.B.* (2014) 225 Cal.App.4th 1358, 1364 (*A.B.*) ["[i]n dependency proceedings, the basic pleading device to assert a child falls within the juvenile court's jurisdiction is a petition.  'It may be an original petition [citation], a subsequent petition for children *who are already dependents* when there are "new facts or circumstances" that bring them within a category of section 300 "other than those under which the original petition was sustained" (§ 342), or a supplemental petition when there are facts which indicate that previous disposition is not appropriate.  (§ 387.)' "], italics added.)

Accordingly, irrespective of any action we might take concerning the section 342 petition, the court had jurisdiction over Salvador—and the corresponding authority to issue the exit order—by virtue of the original, unchallenged section 300 petition.  We therefore cannot grant Mother effective relief, and her arguments concerning the section 342 petition are moot.  (*A.B.*, *supra*, 225 Cal.App.4th at p. 1364 ["no effective relief would be provided

12

to [the] mother by reversing jurisdiction under the original petition because jurisdiction was established independently under the subsequent petition on entirely new and independent facts"].)

Mother argues that we nonetheless should consider her challenge to the section 342 petition because it "directly impacted" the juvenile court's decision to grant sole legal and physical custody of Salvador to Father. (See *In re D.P.* (2023) 14 Cal.5th 266, 283 ["where a jurisdictional finding 'serves as the basis for dispositional orders that are also challenged on appeal' [citation], the appeal is not moot"].)

Even were we to consider Mother's challenge on its merits, however, we would reject it. Mother concedes that a juvenile court has the authority to amend a petition to conform to proof. Indeed, such amendments "are favored, and should not be denied unless the pleading as drafted prior to the proposed amendment would have misled the adversarial party to its prejudice." (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1042 (*Jessica C.*).) Here, Mother's alleged failure to manage her mental health conditions formed the crux of the case against her, and the "dirty home" allegations the court added to the section 342 petition constituted merely additional evidence of her unmanaged mental health.

Moreover, DCFS's May 31, 2023 report noted concerns regarding the cleanliness of Mother's motel room. "[I]t [therefore] cannot be seriously maintained that [Mother] would possibly have prepared [her] defense differently" had she received prior notice of the juvenile court's June 5, 2023 amendments to the section 342 petition. (*Jessica C.*, *supra*, 93 Cal.App.4th at p. 1042.)

## B.    *The Trial Court Properly Terminated Dependency Jurisdiction*

Next, Mother argues the juvenile court erred by terminating dependency jurisdiction over Salvador because (1) she has a strong

13

bond with Salvador, (2) she and Salvador would benefit from in-home family reunification services, and (3) Father allegedly failed to honor prior visitation schedules.  We disagree.

"Where . . . the social services agency recommends termination of jurisdiction, terminating will be the 'default result' unless either the parent, the guardian, or the child objects and establishes by a preponderance of the evidence that conditions justifying retention of jurisdiction exist or are likely to exist if supervision is withdrawn.  [Citation.]"  (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1163 (*Aurora P.*).)  We may reverse an order terminating jurisdiction under such circumstances only if the appellant demonstrates that the evidence compels reversal as a matter of law.  (*Id.* at pp. 1155–1156.)

Mother has failed to make the requisite showing.  She is correct that, at the June 5, 2023 hearing, DCFS requested the court retain jurisdiction to permit social workers to assess Salvador's bond with Mother and Eduardo.  At the June 22 hearing, however, DCFS recommended that the court award sole custody of Salvador to Father and terminate jurisdiction.  The presumption in favor of termination therefore applies here, and Mother bears the burden of demonstrating that "conditions justifying initial assumption of dependency jurisdiction either still existed or were likely to exist if supervision were withdrawn."  (*Aurora P.*, *supra*, 241 Cal.App.4th at p. 1147.)  Mother, however, fails to explain how her bond with Salvador or her desire for in-home services might constitute or otherwise relate to conditions justifying a court's initial assumption of dependency jurisdiction.  And Mother's complaint concerning Father's purported failure to abide by prior visitation schedules does not warrant such jurisdiction.  (See *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1500 ["if parents' poor communication skills and distrust established a need for its continued supervision, the

14

juvenile court could assume or continue jurisdiction in virtually every family law case involving custody or visitation issues"], disapproved on other grounds in *In re Chantal S.* (1996) 13 Cal.4th 196, 202–204.)

### C. *The Trial Court Acted Within Its Discretion in Issuing the Custody and Visitation Orders*

Finally, Mother urges the juvenile court erred in granting Father sole custody of Salvador and limiting her to monitored visits. We are not persuaded.

" '[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case' " (*In re J.M.* (2023) 89 Cal.App.5th 95, 112), and in making such orders, " 'the court's focus and primary consideration must always be the best interests of the child.' [Citations.]" (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094 (*N.M.*).)

We review a court's custody and visitation orders for abuse of discretion. (See *N.M.*, *supra*, 88 Cal.App.5th at p. 1094; *In re John W.* (1996) 41 Cal.App.4th 961, 973–974.) "In reviewing an order for abuse of discretion, we ' "must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling. [Citation.] The precise test is whether any rational trier of fact could conclude that the trial court order advanced the best interests of the child." ' " (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 186–187.)

Here, the evidence DCFS presented to the juvenile court— including Mother's failure to appear for scheduled psychiatric appointments and her repeated hospitalizations—indicated that Mother's mental health conditions remained unmanaged, hindering her ability to make rational decisions concerning Salvador and to provide care for him on a consistent basis. Accordingly, the court acted within its discretion in denying Mother's requests for legal

15

and physical custody of Salvador and in limiting her to monitored visits.  (See *N.M.*, *supra*, 88 Cal.App.5th at p. 1094.)

## DISPOSITION

The orders Mother challenges on appeal are affirmed. NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

WEINGART, J.